ALMA JEKSHEWITZ *vs.* JOHN GROSWALD.

Essex.    November 13, 1928. — January 2, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Deceit,* Misrepresentation of law.  *Fiduciary.  Limitations, Statute of. Particeps Criminis.*

A woman, ignorant of the English language and of the necessary proceedings attending civil marriages, came to this country and thereafter became engaged to be married. The man refused the woman's request to be married in church by a clergyman, suggested a marriage by a justice of the peace, and conducted the woman to a town hall, where he procured a paper from the town clerk and stated to the woman that they would be husband and wife when they had signed it. The woman thereupon signed the paper; and, trusting the man and deferring to his superior knowledge, and relying in good faith upon his statement concerning the paper, thereafter lived with him as his wife for about fourteen years, during which period she did not know that a valid marriage was not and could not be effected in the manner above described, although the man at all times knew there had been no marriage and knew that the woman had trusted him. Immediately upon discovering the invalidity of their supposed marriage, the woman commenced an action of tort for deceit against the man. The trial judge denied a motion by the defendant that a verdict be ordered in his favor. *Held,* that

(1) The plaintiff was not barred from recovery on the ground that she was presumed to know the law;

(2) Since the defendant occupied a position of trust and confidence toward the plaintiff and was possessed of knowledge superior to hers, she was not barred from recovery even if the defendant's misrepresentation was one of law;

(3) Whether the plaintiff was justified in relying upon the defendant's statement or whether she should have known that there was no valid marriage, was a question for the jury;

(4) The statute of limitations did not bar the action: findings were warranted that the deception by the defendant continued during the whole period the parties lived together, and that he practised upon the plaintiff a continuous fraud calculated to conceal the truth from her and to lull her into a sense of security;

(5) Assuming that the defence, that the plaintiff had participated in a crime, was open to the defendant on the pleadings, the plaintiff was not thereby barred from recovery, she having innocently entered into such relations with the defendant solely by reason of his fraud; furthermore, the action was not based upon a violation of law on the part of the plaintiff, but upon a misrepresentation by the defendant, of which the criminal relations which followed were a result and were a ground for the enhancement of damages rather than a bar to recovery;

(6) The motion by the defendant properly was denied.

CONTRACT OR TORT. Writ dated November 27, 1925.

In his answer the defendant pleaded the statute of limitations in addition to a general denial. In the Superior Court, no question of pleadings was raised, except that the action was limited to tort for deceit. Material evidence at the trial before *Gray*, J., is stated in the opinion. At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in his favor. There was a verdict for the plaintiff in the sum of $40,000, and the defendant alleged an exception.

The case was submitted on briefs.

*A. X. Dooley*, for the defendant.

*W. F. Moyes, J. C. Twomey, & H. W. Dow*, for the plaintiff.

SANDERSON, J. This is an action of tort for deceit, in which the plaintiff alleges she was induced to live with the defendant as his wife by reason of his fraudulent representation that they were lawfully married. The defendant excepted to the refusal of the judge to direct a verdict in his favor.

The parties were born in Latvia, the defendant coming to this country in 1906, and the plaintiff in 1909. The jury could have found that they first met in February, 1911, and,

after a courtship lasting a few months, mutually promised to marry; that he gave her a ring and they announced to their friends and relatives their engagement. Thereafter the plaintiff expressed her wish to be married by a clergyman of the Lettish Church in Boston, but the defendant opposed a religious ceremony and suggested a marriage by a justice of the peace. She knew little, if any, English, and up to that time never had been present at a civil marriage and knew nothing of the necessary or usual proceedings attending such marriages. She looked to him to guide her in making arrangements for their marriage and deferred to his superior knowledge. The defendant knew she trusted and had confidence in him. At his suggestion they went to the city hall in Lawrence, and then to the town hall in Methuen, where he left her in a waiting room while he went into the town clerk's office and obtained a paper which he exhibited to her, stating that it was the marriage paper given to him by a justice of the peace and that when they signed it they would be husband and wife. The plaintiff said, "It don't look like a wedding at all"; and he replied, "Don't forget you are not in the old country now, you are across the sea"; they both signed the paper and he said that they were "husband and wife." He told his sister that they had been married at the town hall in Methuen, and they gave a party to many relatives and friends at which their marriage was announced. Relying upon the truth of his statement — that by signing the marriage paper they became husband and wife — the plaintiff began to live with him as his wife. From the date of signing the marriage paper in 1911 until February, 1924, they lived together in a house maintained by him and during that period two children were born to them. He discharged the usual duties of husband and father and she those of wife and mother.

During this period the defendant dealt to a considerable extent in real estate and the plaintiff, at his request, joined as his wife in all deeds and mortgages given by him, releasing dower and statutory rights. Several of these deeds and mortgages were executed within six years of the commencement of this action. In the year 1922, when differences arose

between them, he asked her not to get a divorce. In February, 1924, a written agreement was executed by them with a trustee reciting that the plaintiff was the wife of the defendant and provision was therein made for her support. On December 30, 1924, another agreement in substitution of the foregoing was executed, in which the plaintiff was again described as the wife of the defendant. In August, 1925, he wrote a letter from Latvia to the plaintiff, which the jury could have found was designed to deceive her as to the legality of their marriage. He never told her they were not married and she did not learn that fact until in 1925, a short time before this action was begun.

In the consideration of this case we must start with the admitted fact that the parties never were married. The testimony which, under other circumstances, as in *Riley* v. *Murphy, post,* page 420, just decided, would have a tendency to prove marriage can have no such significance in this case.

1. The defence is made that the plaintiff cannot recover because the misrepresentation was one of law and not of fact. The question whether a misrepresentation of law may be actionable was expressly left open in *Burns* v. *Dockray,* 156 Mass. 135, 138. *Kerr* v. *Shurtleff,* 218 Mass. 167, 173, 174.

The sole reason urged by the defendant in support of his contention, that there can be no recovery because the misrepresentation was one of law, is that every one is "presumed to know the law." The meaning of that expression was considered in *Witherington* v. *Eldredge,* 264 Mass. 166, 174, 175, where it was said: "The plaintiffs' argument based upon the presumption of knowledge of the law is obviously unsound. This presumption means simply that ignorance of the law is no excuse. To illustrate, if Marion Eldredge knew that her father and stepmother were not married and induced them to live together without knowing that to do so was unlawful, her lack of knowledge would be immaterial."

If it be assumed that the misrepresentation in the case at bar was one of law, the plaintiff upon the facts of this case is not for that reason barred from recovery. The defendant occupied a relation of trust and confidence toward the plaintiff because of their engagement to marry and was bound to

act fairly and in good faith in his dealings with her. *Eaton* v. *Eaton*, 233 Mass. 351, 371. *Wellington* v. *Rugg*, 243 Mass. 30, 35. When a party occupies such a relation his misrepresentations of law may be actionable. The party with whom, because of that relation, he had the duty to deal fairly would have a right to rely and act upon such representations if believed without negligence. *Lewis* v. *Corbin*, 195 Mass. 520. Misstatements of law may also be a ground of liability if a party possessed of superior knowledge takes advantage of the ignorance of the other to deceive him by such misstatements. *Rosenberg* v. *Doe*, 148 Mass. 560. *Busiere* v. *Reilly*, 189 Mass. 518. *Hashem* v. *Massachusetts Security Corp.* 255 Mass. 29, 32. The facts stated could have been found to bring the case at bar within this principle. The finding must have been made that the plaintiff did not know the contents of the paper signed and did not know that no valid marriage could be entered into by signing it. The defendant not only knew that no valid marriage was effected, but testified that neither of them wanted a legal marriage and that they both pretended to be married to deceive their friends and relatives.

2. We are of opinion that the question, whether the plaintiff exercised due diligence and was justified in placing confidence in the statement of the defendant or should have known from the beginning that there was no valid marriage, was for the jury.

3. The defence of the statute of limitations also presented an issue of fact. The jury could have found that the confidential relationship continued and that the deception practised at first was operative until shortly before the action was begun. Upon such a finding the lapse of time would not be a bar to maintenance of the action. G. L. c. 260, § 12. *Dean* v. *Ross*, 178 Mass. 397. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 201. *O'Brien* v. *McSherry*, 222 Mass. 147. The jury also could have found active fraud of a kind calculated to conceal the truth from the plaintiff and to lull her into security in the belief that she was the defendant's wife. In *Batty* v. *Greene*, 206 Mass. 561, 565, a married woman went through

a form of marriage with the plaintiff without disclosing the fact of her marriage. The court said "the fraud consisted not alone of one single act, but of a continuous series of acts, or rather of a continuous situation. Day by day and hour by hour did this woman, by maintaining in appearance the relation of a lawful wife, renew and repeat this fraud. The concealment was continuous, and the fraud was as continuous as the concealment."

4. The defendant contends that the plaintiff by cohabiting with him participated in a crime and for that reason should not be allowed to recover. The plaintiff has not been convicted of the crime to which the defendant refers, but undoubtedly she might be so convicted notwithstanding the absence of criminal intent. *Commonwealth* v. *Thompson*, 11 Allen, 23. *Commonwealth* v. *Mixer*, 207 Mass. 141, 142, 148. Illegality was not set up in the answer, G. L. c. 231, § 28, *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 595, 596. But, if it be assumed that the defence is open and that the plaintiff's own case reveals illegal action on her part, it does not follow that she is thereby deprived of her right to recover. The jury could have found that she innocently entered into the relations with the defendant solely by reason of his fraud, and that he thus created the illegality behind which he now undertakes to shield himself. If the defendant's representation had been true no act of the plaintiff was either criminal or immoral.

Where a person is induced by the fraudulent representation of another to do an act which, in consequence of such misrepresentation, he believes to be neither illegal nor immoral, but which is in fact a criminal offence, he has a right of action against the person so inducing him for damages sustained by him in consequence of his having done such act. *Burrows* v. *Rhodes*, [1899] 1 Q. B. 816. In *Cooper* v. *Cooper*, 147 Mass. 370, the court said that a false representation by the defendant that he was divorced from his former wife, whereby the plaintiff was induced to marry him, gave her a remedy in tort for deceit. It seems to have been assumed that the fact that she had unintentionally violated the law or innocently committed a crime by cohabiting with him

would be no bar to her action, but rather that it might be a ground for enhancing her damages. The injury to the plaintiff was said to be in her being led by the promise to give the fellowship and assistance of a wife to one who was not her husband and to assume and act in a relation and condition that proved to be false and ignominious. Damages for such an injury were held to be recoverable in *Sherman* v. *Rawson*, 102 Mass. 395, and *Kelley* v. *Riley*, 106 Mass. 339, 343.

Furthermore, in the case at bar the plaintiff does not base her cause of action upon any transgression of the law by herself but upon the defendant's misrepresentation. The criminal relations which followed, innocently on her part, were but one of the incidental results of the defendant's fraud for which damages may be assessed.

Actions for deceit for fraudulently inducing a woman to enter into the marriage relation have been maintained in other jurisdictions. *Sears* v. *Wegner*, 150 Mich. 388. *Larson* v. *McMillan*, 99 Wash. 626. *Blossom* v. *Barrett*, 37 N. Y. 434. *Morrill* v. *Palmer*, 68 Vt. 1. Considerations of public policy would not prevent recovery where the circumstances are such that the plaintiff was conscious of no moral turpitude, that her illegal action was induced solely by the defendant's misrepresentation, and that she does not base her cause of action upon any transgression of the law by herself. Such considerations distinguish this case from cases in which the court has refused to lend its aid to the enforcement of a contract illegal on its face or to one who has consciously and voluntarily become a party to an illegal act upon which the cause of action is founded. *Szadiwicz* v. *Cantor*, 257 Mass. 518, 520. The case was properly submitted to the jury.

*Exceptions overruled.*