36690. MUTUAL SAVINGS LIFE INSURANCE
COMPANY *v.* HINES.

Decided September 12, 1957—Rehearing denied
October 4, 1957.

444

*Cravey & Pentecost, M. K. Pentecost, Jr.,* for plaintiff in error.
*Robert E. Flournoy, Jr.,* contra.

CARLISLE, J. ■ ■ Construed in favor of the verdict, the evidence shows that the plaintiff took his policies to the funeral home which was making arrangements for the burial of his wife; that that company prepared the proofs of loss for both policies and a representative went with the plaintiff to the insurance company and presented them; that thereafter a representative of the company told the plaintiff he could not pay off the $1,000 policy because the insured died a natural death; that the agent then told the plaintiff he could pay the $500 policy and plaintiff had some "deductions" coming, and he would therefore pay him $595 so that he could pay the funeral expenses, this sum being the amount owing by the plaintiff to Haugabrooks Funeral Home. The agent did not tell the plaintiff he was compromising his $1,000 policy, and the plaintiff, an illiterate negro, could not

read the check and release other than the figure "$595" thereon and did not know that the $1,000 policy was involved in the settlement. The plaintiff could read his name and enough common words to read the "funnies" but had not gone to school and could not read the contents of the release, and it was represented to him that the check was "some kind of deduction about being paid up ahead." The defendant's agent admitted that the $95 included a small sum which would in any event have been refunded to the plaintiff on advance premiums. There was, accordingly, evidence from which the jury could have found that the plaintiff could not read the check and release form, could not know its contents other than as represented to him by the defendant, and that the contents thereof were misrepresented to him. The plaintiff testified that the defendant's agent "called himself reading it to him," by which he apparently meant that the agent explained the contents to him *as though* he were reading them, and he thus understood that it was being read and explained to him. This case is accordingly controlled by *Grimsley* v. *Singletary*, 133 *Ga.* 56 (1) (65 S. E. 92, 134 Am. St. R. 196) rather than *B. E. Robuck, Inc.* v. *Walker*, 212 *Ga.* 621 (94 S. E. 2d 696), and the trial court did not err in submitting to the jury the question of whether there was an accord and satisfaction binding on the plaintiff. The general grounds of the motion for a new trial, in so far as they relate to this issue, and special ground 8 complaining of the charge on this subject are without merit. (b) Special ground 4, which complains that the defendant was entitled to a trial of the issue of accord and satisfaction under his plea, and prior to the trial of the main case, furnishes no ground for reversal, for the reason that whether or not the plaintiff and the defendant had settled and compromised this claim is a matter of confession and avoidance which, under Code § 81-307, must be specially pleaded, but this does not mean that the matter, which is inextricably bound up with the general defense to the action, is such a special plea as under Code (Ann.) § 81-1002 must be the subject matter of a special plea to be disposed of at the first term. There is a large volume of defensive matter, such as pleas of payment, estoppel, statute of limitations, recoupment, settlement, justification, and so on which, while it

must be specially pleaded, itself constitutes a defense to the action and should be tried out at the time the main issue is tried. The court here properly instructed the jury to first consider the plea of accord and satisfaction, and to return a separate verdict on this issue. (c) Error is assigned in special ground 9 on the charge: "Now if you find from the evidence that there was an agreement between these parties whereby the plaintiff received certain sums in consideration of which he agreed to discharge the defendant from further liability, then such a finding would end the case and you should not go any further but find in favor of the plea of accord and satisfaction." Since the release relied on by the defendant here was an express agreement, there is no merit in the contention that the court should have charged in effect that accord and satisfaction may also arise from an implied agreement by the acceptance and retention of benefits.

■ While hospital records are ordinarily inadmissible as hearsay (*Bankers Health & Life Ins. Co.* v. *Kelsey*, 60 *Ga. App.* 899, 5 S. E. 2d 600) no cause for reversal is shown by special ground 5, complaining of the admission of certain hospital records after the same had been identified by a medical witness as records having been made in the usual course of business of the hospital. The witness testified fully as to the condition of the insured while in the hospital, and neither the amended motion for a new trial nor the brief of evidence contains any indication of the contents of the record alleged to have been erroneously admitted. The record and assignment of error are accordingly incomplete on this point, and no harm is shown by the admission of the evidence.

■ Special ground 6 complains that after the plaintiff on cross-examination testified that he did not know the insurance company gave him $95 as a compromise payment on the $1,000 claim for accidental death insurance, the court sustained an objection to the question, "Do you know it now?" Special grounds 10 and 11 assign error on the following charge: "If you find that the contents and the import and effect of the instrument were made known to the plaintiff and he understood them, then he would be bound regardless of whether he could read or whether he placed his signature in ignorance of the exact recital; that is, if you find that he was apprised fully of the contents and the effect of

it and that he understood it and understood the nature and consequences of his assent. However, if you find from the evidence in this case that any character of artifice, constructive fraud or deceit was practiced by the agents of this defendant to obtain any such agreement, then the plaintiff would not be bound by the agreement. In order to reach that conclusion, you would have to find from the evidence that this plaintiff was not advised as to the contents of the instrument which he signed, that under the circumstances there present he was not able to ascertain for himself due to illiteracy, inability to read or otherwise what the contents of the document were." The charge is not erroneous as contended in that it eliminated from the jury's consideration the question of whether the plaintiff had used due diligence to ascertain the contents of the release. Had further instructions on this subject been desired, a request therefor should have been made. *Payne* v. *Young,* 27 *Ga. App.* 370 (4) (108 S. E. 312). Nor was the ruling on evidence erroneous as abridging the defendant's right to cross-examination, since the act of signing the release must be judged by the plaintiff's knowledge at the time it was done, and subsequently acquired knowledge on his part of the defendant's avowed reason for paying the additional $95 would not affect the question of fraud one way or the other. It is true, of course, that if the plaintiff, after discovering the $95 included in his check constituted a compromise settlement of his $1,000 policy, decided to ratify the agreement as made, this action would not lie, and this question is raised by special ground 15 which complains that no offer to rescind and restore the benefits received was made prior to the filing of this action. As to this, the rule is that, in order to rescind, either the plaintiff must restore or tender back the benefits, or show a sufficient reason for failing to do so. *Drew* v. *Lyle,* 88 *Ga. App.* 121 (76 S. E. 2d 142). But one need not tender back that to which he is admittedly entitled in any event. *Dorsey* v. *Green,* 202 *Ga.* 655 (44 S. E. 2d 377). And he need not offer to restore where the action of the opposite party has made restoration impossible. *Bank of LaFayette* v. *Giles,* 208 *Ga.* 674 (69 S. E. 2d 78). Here, some unascertained portion of the $95 was admittedly due the plaintiff for return premiums in the event the $1,000 policy was inoperative, or the entire $1,000 was due him, unless he had by settlement waived

his right thereto. Further, the proceeds of the $500 policy were due him in any event. The defendant, however, elected not to pay this money directly to the plaintiff, who was the sole beneficiary, but took it upon itself to make out a check jointly to the plaintiff and Haugabrooks Funeral Home, knowing that the plaintiff owed exactly that amount for burial expenses, and his agent further told the plaintiff the check was in the amount of $595 so that he could pay to have his wife buried. Haugabrooks Funeral Home received the check, as intended by the defendant when it made it out in this unauthorized manner, and this placed it beyond the power of plaintiff to tender it back. Under these circumstances, the defendant cannot complain that the plaintiff ratified the agreement by receiving and retaining its benefits, since, due to the defendant's act, the plaintiff never at any time had the sole control of those benefits to which he was entitled. Since the check was made out to two entities, one of whom was entitled to no part of the proceeds of the insurance, it effectively kept the plaintiff from the means of legally controlling the payment made by the defendant. The defendant, therefore, cannot complain that the plaintiff did not return the check or the proceeds thereof to it before commencing this action.

■■ As to the merits of the defendant's denial of liability on the $1,000 accidental death policy, the evidence is undisputed that the insured received severe burns over 40 percent of her body surface; that such a burn is extremely dangerous and a burn covering 50 percent of the body surface is, in emergency, considered so liable to fatality that relief efforts are to be abandoned; that following the burns kidney and respiratory complications set in and the insured died "ultimately from her burns." The death certificate shows burns to be the morbid condition and underlying cause giving rise to the immediate cause of death. It is well settled in this State that in such circumstances the death is deemed to come under the policy regardless of an exclusion of "death resulting directly or indirectly from bodily or mental infirmity or disease in any form." *Prudential Ins. Co.* v. *Kellar,* 95 *Ga. App.* 332 (98 S. E. 2d 90); *Inter-Ocean Casualty Co.* v. *Scott,* 91 *Ga. App.* 311 (85 S. E. 2d 452); *Thornton* v. *Travelers Ins. Co.,* 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99); *Hall* v. *General Accident Assur. Corp.,* 16 *Ga. App.* 66 (85 S. E.

600). There is in fact no evidence in this record which would suggest that the kidney and respiratory trouble even existed prior to the accidental injury, instead of developing merely as complications therefrom. The evidence to support a finding that the defendant was liable under the policy is therefore more than ample.

█ It follows that special grounds 7, 12, 13 and 14 contending that an award of attorney fees and penalty under Code § 56-706 were unauthorized, are without merit. Nor was the charge on the plaintiff's right to penalty and attorney fees, where the defendant insurance company has acted in bad faith in refusing to pay a claim within 60 days after demand, error on the ground that no demand was shown by the evidence. The plaintiff presented his policies to the company for payment; he also had prepared and sent in proofs of loss, and was informed by the company that they had no liability as to the accidental death policy. The defendant again denied liability on the ground of accord and satisfaction in answer to a letter written by his attorneys inquiring the reason for denial of the claim. All of these acts took place at a time when the policy was due and payable, and the transactions constituted a demand and refusal to pay within the purview of Code § 56-706. See *American National Ins. Co.* v. *Brantley,* 38 *Ga. App.* 505 (2) (144 S. E. 332).

The trial court did not err in denying the motion for new trial.

## ON MOTION FOR REHEARING.

In their motion for rehearing, counsel for the plaintiff in error point out that the plaintiff received from the defendant $95 more than he was entitled to under the $500 policy paid by the defendant before this action was brought, and to allow the plaintiff to retain this sum in addition to recovering the full amount of the $1,000 policy would be to allow an unjust enrichment of the plaintiff. The plaintiff in error also concedes that under the evidence the plaintiff was entitled to some small sum as return of advance premiums, which, under the evidence most favorable to him, amounted to $3.10. It accordingly appears that, as to the sum of $95 less $3.10, or $91.90, the plaintiff has received an aggregate recovery greater than the amount sued for, and to which he would not be entitled under his pleadings or under the

450

evidence adduced on the trial, and the judgment should be modified by having the plaintiff write off this sum from the amount of recovery.

The judgment is therefore affirmed on condition that the plaintiff write off therefrom the sum of $91.90; otherwise, it is reversed.

*Judgment affirmed on condition. Gardner, P. J., and Townsend, J., concur.*