40954, 40955.   COLE v. CATES et al.; and vice versa.

DECIDED NOVEMBER 10, 1964—
REHEARING DENIED DECEMBER 15, 1964.

*Kemp & Watson, John L. Watson, Jr.,* for plaintiff in error.
*Huie, Etheridge & Harland, Harry L. Cashin, Jr.,* contra.

RUSSELL, Judge. ■ Except for necessary changes in names, amounts, and contract stipulations, the allegations of this petition are identical with that considered in *Hunter v. Benamy,* 101 Ga. App. 907 (115 SE2d 424). There, as here, the trial court struck down the first count and upheld the second, but there no cross bill of exceptions was filed. Since the cross bill assigns

error on striking count 1, it is not the law of this case, as it was in *Hunter,* that the sale contract is void but this is one of the issues to be decided. The cross bill of exceptions will be first considered, for, as stated in *Hunter,* the only ground on which it could be held that count 1 fails to state a cause of action is that the written contract is void and unenforceable.

■ The offer to purchase set out in the contract of sale was made and accepted on the same day. It is therefore immaterial that the part of the written contract indicating a maximum time for acceptance was not completed or that the petition does not allege that the broker notified the seller of the acceptance. *Robinson v. Tate,* 217 Ga. 93 (121 SE2d 21) is not authority for a contrary conclusion; it holds that a suit for specific performance will not lie where the offer is accepted after the time for acceptance has expired and the petition does not show that time of acceptance was waived. Here the defendant Cole was himself the acceptor of McFarland's offer to purchase and necessarily had knowledge of his own act. Similarly, the main point at issue in *Harris v. Porter's Social Club, Inc.,* 215 Ga. 687 (113 SE2d 134) was that the contract did not show on its face that the persons executing the sale contract were acting for the defendant, and the maximum time for acceptance was not shown, from which it followed that nothing in the contract bound the defendant.

■ The second objection to count 1 is that a stipulation in the sale contract called for a survey "to be furnished by the seller" to determine the total acreage; the petition alleges the result of the survey but fails to state that it was *furnished* by the defendant. If the defendant in fact failed to furnish the survey he can glean no comfort from his own breach of the contract. If he furnished a survey from which a different number of acres appears to be involved, this is a matter of defense; it would not render the contract void or count 1 subject to general demurrer.

■ It is also contended that certain provisions of the contract are too contradictory and indefinite to be enforceable: the balance of the purchase price over the down payment is first stated "to be evidenced by a note secured by a first mortgage on the property described herein," but stipulation 5 provides that the "security deed given to secure note for the deferred portion

of the purchase price shall contain a clause by which the seller agrees to release property from the lien of the security deed" in a described manner. It is contended that the security instrument may be either a deed or a mortgage but not both, and that the contradiction in terminology voids the instrument. "In this State a deed to secure a debt is not the same as a mortgage. Such a deed conveys title; a mortgage is only a lien." *Loftis v. Alexander*, 139 Ga. 346, 349 (77 SE 169, AC 1914B 718). In most States this distinction does not exist; the mortgage conveys the sort of title here transferred by the security deed. Intrinsic evidence shows the two words are used inaccurately as synonyms, for stipulation 5 speaks of the *lien* of the security deed. Lay persons, and even on occasion attorneys, will speak of a mortgage when they actually mean a Georgia deed to secure debt. As was stated in *Rives v. Atlanta Newspapers, Inc.*, 110 Ga. App. 184 (138 SE2d 100): "Courts will take notice of that which is within the knowledge of most men. The test is (1) whether the fact is one of common, everyday knowledge that all men of average intelligence are presumed to know, and (2) whether it is certain and indisputable." It would not stretch the bounds of judicial knowledge too greatly to admit that the terms *mortgage* and *deed to secure debt* are commonly if erroneously confounded in ordinary usage. They appear to have been so used here. The ambiguity created, if it exists in fact, is not such as to void the instrument and render it incapable of enforcement in an action such as this, but as between the parties their common intent would be subject to proof. Nor do any of the remaining special stipulations appear vague and indefinite. The contract is sufficiently explicit in its terms to bind all the contracting parties according to the tenor of the agreement. Since count 1 sought to recover commissions based on a valid contract of sale allegedly breached only by the defendant, it was error to sustain the general demurrer to count 1.

■ It is contended that count 2 fails to state a cause of action because it is based on an oral listing agreement which was merged in the written sales contract. The rule, as stated in *Langenback v. Mays*, 205 Ga. 706 (1) (54 SE2d 401, 11 ALR2d 1221) is as follows: "A distinct collateral oral agreement, not

inconsistent with a written contract, is not necessarily merged therein, and one contract may be the consideration of another, the inducement to its execution, and an independent oral agreement which has been so induced may be proved and enforced though not referred to in the written contract." A second contract may also constitute performance or part performance of the first. A prior parol agreement may not contradict, vary or otherwise modify the written agreement. *Chelsea Corp. v. Steward,* 82 Ga. App. 679 (62 SE2d 627); *Fisher v. J. A. Jones Constr. Co.,* 87 Ga. App. 317 (73 SE2d 587). In so far as the provision regarding brokerage commissions is concerned, it appears that the oral and written contracts are identical. The oral agreement was in the nature of an employment contract under which the plaintiffs agreed to find a purchaser for the property on terms stipulated by the seller. They did so, and the contract of sale evidences these facts in writing and therefore, in addition to being a contract in its own right capable of enforcement by the brokers, furnishes evidence of the fact that the oral contract was in fact performed by the plaintiffs. It follows that count 2 sets out a cause of action based on the oral agreement between the plaintiffs and the defendant to pay them stated commissions for their services in procuring a purchaser ready, willing, and able to buy on the terms stated, and that the sale contract is properly pleaded as an additional fact showing performance of this contract. It was not error to overrule the general demurrer to count 2.

*Judgment affirmed on main bill of exceptions; reversed on cross bill. Nichols, P. J., and Hall, J., concur.*