41795. COLE v. CATES et al.

ARGUED FEBRUARY 7, 1966—DECIDED APRIL 15, 1966—
REHEARING DENIED APRIL 29, 1966

*Kemp & Watson, John L. Watson, Jr.,* for appellant.
*Huie, Etheridge & Harland, Harry L. Cashin, Jr.,* for appellee.
PER CURIAM. This is a suit by a licensed real estate broker for commissions, and is the second appearance of this case in this court. For a brief statement of count 1 of the petition, the only count involved on this appeal, see *Cole v. Cates,* 110 Ga. App. 820 (140 SE2d 36). By amendment, the plaintiffs amended their petition (in accordance with the allegations of defendant's answer) to increase the acreage of the land involved and thus increase the amount of commission alleged to be due. The plaintiffs made an oral motion to strike paragraphs 7 and 8, and paragraphs 10 through 20 of the defendant's answer on the ground that the said paragraphs failed as a matter of law to constitute a legal defense of fraud. "7. Defendant admits that W. M. McFarland has demanded of him to consummate the sale of his property under said purported contract and that defendant has failed and refused to sell his property under said purported contract because said purported contract was obtained from him

by fraud, artifice and deceit. 8. Defendant admits that demand had been made upon him to pay petitioners a commission allegedly due under said purported contract and that he has refused to pay them any such commission because said contract was obtained from him by fraud, artifice and deceit. . . . 10. Defendant specifically denies that he entered into a contract, a copy of which is attached to plaintiff's petition as Exhibit 'A', to sell his land to W. M. McFarland because he did not execute a contract for the sale of his land. 11. Defendant shows he is 85 years of age. 12. Defendant shows that at the time said purported contract was signed he was blind in one eye and that his vision is so impaired in the other eye that he cannot see without glasses and then only in a limited fashion and can read only with glasses and a magnifying glass. 13. That he was well acquainted with one Mason Mobley, a real estate man, and had known him for many years. 14. That defendant was considering the sale of his property and requested said Mason Mobley to come by and see him and did discuss selling the land. That later Mason Mobley returned to defendant's home and told him he had a paper to list defendant's property with him as agent so they could advertise and get four or five bids on the land. Whereupon defendant said he would get his glasses to see, but that even with them he couldn't see very much, whereupon Mason Mobley again told him this is not a contract to sell, but is a contract to list the property with me so we can get some bids on your property and to advertise said property in the Atlanta News Papers for sales and bids. Whereupon defendant trusting and relying upon the statements of Mason Mobley that this was a listing contract to get bids on the property, did sign a listing contract making Mason Mobley his real estate agent to find a suitable purchaser for the true value of the land. 15. That at no time did defendant intend to sell his property for $7,400.00 per acre because his said property has a value of $15,000.00 per acre and that said sum of $7,400.00 is far below the real and actual value of the land. 16. That at the time of signing said listing contract, which plaintiff now contends was a contract for sale of property, defendant believed and was led to believe by the representations of Mason Mobley, that he was employing

Mason Mobley to be his agent for listing said property for sale. 17. That immediately upon his learning that Mason Mobley contended that defendant signed a sales contract defendant repudiated said alleged contract. 18. That at the time of defendant signing said listing contract Mason Mobley was the agent, servant, and employee of plaintiffs. 19. That to require defendant to pay plaintiffs would be an unconscionable act. 20. That such acts of Mason Mobley constitute fraud and deceit." The court sustained this oral motion and struck the above numbered paragraphs of the answer. After these paragraphs were stricken, the defendant filed the following amendment to his answer: "21. That at the time of the alleged execution of said purported contract the defendant was 84 years of age and was suffering from poor vision resulting from a cataract on his right eye; chronic lymphocytic leukemia; a large hydrocele about the left testicle; a bilateral inguinal hernia; enlargement of the prostate gland; and cerebral arteriosclerosis. That all of such ailments had greatly reduced his mental ability. That as between this defendant and Mason Mobley there was a great disparity of mental ability." Upon consideration of a motion for summary judgment filed by the plaintiffs, and affidavits in opposition thereto, the court entered a summary judgment in favor of the plaintiffs for $8,235.46 principal, $1,392 interest and costs of court. The defendant appeals from this judgment and enumerates as errors: 1. The sustaining of the plaintiffs' oral motion to strike the above enumerated paragraphs of the defendant's answer. 2. The rendition of the summary judgment by the Civil Court of Fulton County on the ground that it does not have jurisdiction to issue a summary judgment. 3. That the court erred in rendering the summary judgment because the pleadings, depositions and admissions and affidavits show there were genuine issues as to material facts in the case and that the appellees were not entitled to a judgment as a matter of law.

◼ While the Civil Court of Fulton County, when first created as the Municipal Court of Atlanta (Ga. L. 1913, p. 145, et seq.) may not have been a court of record, yet, in view of the amendatory Acts relating to the keeping of minutes, etc. (Sec. 4 of

Ga. L. 1914, pp. 178, 181; Sec. 4 of Ga. L. 1925, pp. 370, 389; Sec. 1 of Ga. L. 1956, pp. 3271, 3273, striking Sec. 4 and enacting a new section known as 23a; Sec. 1 of Ga. L. 1951, pp. 3105, 3107, striking Sec. 23 of the original Act as amended by the Act of 1925, and enacting a new Sec. 23 which provides that the Clerk of the Civil Court of Fulton County "shall perform in said court the same duties that are required of the Clerk of the Superior Court of said county so far as the same are applicable to and not inconsistent with the provisions of this Act . . ."), the Civil Court of Fulton County is now a court of record (*Ozburn v. National Union Fire Ins. Co.,* 45 Ga. App. 33 (163 SE 321) and as such has jurisdiction to render summary judgments under the Act of 1959 (Ga. L. 1959, pp. 234, 236; *Code Ann.* § 110-1209). No such requirements are contained in the Act creating the Civil and Criminal Court of De-Kalb County, and the case of *DeKalb County v. Deason,* 221 Ga. 237 (144 SE2d 446) is, therefore, not authority for a ruling to the contrary, but sustains the ruling here made.

■ "The often announced rule that one having the capacity and opportunity to read a written contract and who signs it, not under any emergency, and whose signature is not obtained by any trick or artifice of the other party, but solely on the representations of the other party as to its contents, cannot afterwards set up fraud in the procurement of the signature of the instrument, *Truitt-Silvey Hat Co. v. Callaway & Truitt,* 130 Ga. 637 (61 SE 481), *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788), is but another statement of the rule that one cannot claim to be defrauded by the false representations of another, where, by the exercise of ordinary diligence, such person could have discovered the falsity of the representations before acting thereon; and, . . . there is a wide difference between that class of cases in which one can read and those where one, from illiteracy or ignorance, is unable to read the writing he is induced to sign, and has to rely upon the representations made by the draftsman, *Lee v. Loveland,* 43 Ga. App. 5 (2b) (157 SE 707), to the extent that one who cannot read 'may, ordinarily, rely upon the representation of the other party as to what the instrument is, or as to what it contained; and his mere

failure to request the other party, or someone else, to read it to him will not generally be such negligence as will make the instrument binding upon him,' *Grimsley v. Singletary,* 133 Ga. 56, 58 (65 SE 92, 134 ASR 196); *Pirkle v. Gurr,* 218 Ga. 424 (128 SE2d 490), *Mutual Savings Life Ins. Co. v. Hines,* 96 Ga. App. 442 (100 SE2d 466), cp. *Southern Fertilizer &c. Co. v. Carter,* 21 Ga. App. 282 (1) (94 SE 310)." *Smith v. Agan,* 111 Ga. App. 536 (1) (142 SE2d 291). Here, the party was able to read. Under these circumstances, the representations by the other party that the contract was only a listing contract, when in fact it was a contract of sale, would not be such trick or artifice as would amount to fraud. In *West v. Carolina Housing &c. Corp.,* 211 Ga. 789 (89 SE2d 188), the "often announced rule" first stated above was stated in the first division of the opinion and applied in the second division of the opinion as follows: "The petitioners' allegations, as finally amended, being that they were ignorant colored people, practically illiterate, and totally incapable of reading and understanding the nature of the papers presented to them for their signature; that it was late at night, and there was no one to turn to for advice and guidance at that time; and that they were, therefore, required to rely upon the representations of the agents of one of the defendants, which were false, are totally insufficient to relieve them of due diligence or to show any emergency making it necessary for them to sign without delay; and there being no fiduciary relationship between the parties, the petition fails to allege a cause of action, and the court did not err in sustaining the demurrer and in dismissing the petition." The mere fact that the defendant had confidence in the party with whom he contracted does not constitute a confidential relationship or a "similar relationship of mutual confidence" within the meaning of *Code* § 37-707 (*Dover v. Burns,* 186 Ga. 19, 26 (196 SE 785) so as to require the application of *Code* § 37-708. Even if we should assume that the proposed contract, which the defendant thought he was entering into, did create a confidential relationship between the parties, this cannot be twisted by fallacious reasoning into a confidential relationship prior thereto. A confidential relationship does not exist prior to the contract or legal relationship creating it, unless it

exists for other reasons. See *Ingram v. Rooks*, 221 Ga. 701 (2) (146 SE2d 743). Here there are no other reasons recognized by statute or by any court decision of this State. We have found no such decision, and we presume the minority has not, since none is cited to sustain the minority ruling of confidential relationship. Our sympathy is with the defendant, under the facts alleged in his answer, and we do not entirely agree with the law announced in the cases; however, it is the duty of this court to apply the law regardless of individual disagreement with the established rule to be applied. In view of the decisions of the Supreme Court, by which we are bound, and in view of the numerous decisions of this court to the same effect, we are constrained to hold that the trial court did not err in sustaining the demurrers to the answer of the defendant and in granting the summary judgment for the plaintiff.

*Judgment affirmed. Bell, P. J., Hall, Eberhardt, Pannell and Deen, JJ., concur. Felton, C. J., Nichols, P. J., Frankum and Jordan, JJ., dissent.*

HALL, Judge, concurring. I agree that the law of Georgia is correctly stated in the majority opinion.

The better rule regarding fraud in the factum between the parties was well stated by Lord Chelmsford in Directors &c. of the Central R. Co. of Venezuela v. Kisch, Law Rep., 2 H. L. 99, 120 (1867): "But it appears to me that when once it is established that there has been any fraudulent misrepresentation or wilfull concealment by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector, 'You, at least, who have stated what is untrue, or have concealed the truth, for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.'" This is also the view in many other jurisdictions. 37 CJS 274, § 530 (c). In seeking to choose between a fraudfeasor and a negligent party, the Georgia law unfortunately goes with the alleged crook.

FELTON, Chief Judge, NICHOLS, Presiding Judge, JORDAN and FRANKUM, Judges, dissenting. We think that the court erred in

sustaining the plaintiff's oral motion to strike the various paragraphs of the defendant's answer. *Code* § 37-707 provides: "Any relations shall be deemed confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith; such as partners, principal and agent, etc." The above Code section does not attempt to comprehensively enumerate the cases wherein the relation of mutual confidence is present. We are mindful of the cases which hold that where parties are dealing at arm's length and there is no fiduciary or confidential relation, a party who can read must read, or have read to him, the provisions of instruments which he signs, where there is no emergency excusing his doing so unless the signature is procured by trick or artifice which prevents the reading of the instrument. *Dover v. Burns,* 186 Ga. 19 (196 SE 785); *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788); *Pirkle v. Gurr,* 218 Ga. 424 (128 SE2d 490) and cit. *Code* § 37-704 is as follows: "Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." We are of the opinion that the relationship between the defendant in the trial court and the plaintiffs' agent, Mason Mobley, was in the nature of a confidential one within the meaning of the Code section next above. The parties were not at arm's length, in the ordinary signification of that expression. The stricken paragraphs show that the defendant had known the agent of the plaintiffs for a long time and that he understood that what he was doing was employing the agent of the plaintiffs as his agent to list and sell his property. It seems to us that it would be most unreasonable to say, where a man intends to enter a confidential relationship with another, that his acts in selecting his confidential agent are at arm's length the instant *before* he employs him, and that the parties occupy a fiduciary and confidential relationship the instant *after* the employment is made. It therefore very forcibly strikes us that in such a situation the

agent was under an obligation to the defendant not to mislead him as to the nature of the contract he was signing under the facts alleged. We believe that the obligation to communicate the truth arose from the particular circumstances of this case which show that the defendant had already decided to entrust the agent with his business and was in process of appointing the agent to sell his land on commission. Such a misrepresentation as is here alleged amounts to a trick or artifice, for the reason that the defendant, under the circumstances, had a right to rely on the truthfulness of the representations. *Code* § 37-805 is as follows: "Mere inadequacy of price, though not sufficient to rescind a contract, may justify a court in refusing to decree a specific performance; so also any other fact showing the contract to be unfair, or unjust, or against good conscience." Not only is there alleged in said answer an inadequacy of price but, in addition thereto, there is alleged a disparity of mental capacity between the plaintiffs' agent and the defendant. While the above Code section on inadequacy of price justifies a court of equity in refusing to decree a specific performance, the action at law in this case amounts to a partial decree of specific performance insofar as the plaintiffs and the defendant were concerned.

The majority opinion is based on the erroneous premise that a *legal* relationship involving fiduciary duties must be shown to give rise to a confidential relationship. We do not believe that this premise is correct. The showing of a relationship *in fact* which justifies the reposing of confidence by one party in another is all the law requires. *Code* § 37-704 expressly goes beyond the strict fiduciary relations of the parties and states that the obligation to communicate may arise "from the particular circumstances of the case." The same is true as to *Code* § 37-707. It would seem that the law with reference to confidential relationship is not as restricted as contended by the majority. Such a strict rule would bar one of a couple engaged to be married from reposing confidence in the other, even one minute before the marriage ceremony. "A man occupies a relation of trust and confidence toward a woman whom he is engaged to marry, and is bound to act fairly and in good faith in his dealings with her. Jekshewitz v. Groswald, 265 Mass. 413 (164 NE 609, 62

ALR 525); Eaton v. Eaton, 233 Mass. 351 (124 NE 37, 5 ALR 1426)." 23 Am. Jur. 764, Fraud and Deceit, § 14, n. 12. A valid analogy to that situation is presented by the facts in this case. The real estate salesman is agreeable to being appointed as a listing agent. The owner is willing to appoint the agent in such a capacity. In the process of the appointment the alleged misrepresentation is made. A stronger case for a basis of trust and reliance could hardly be imagined unless it is the engaged couple situation. We maintain that the Code sections cited are in accord with the weight of authority in this country, and the majority have cited no cases to show the contrary. The following quote from 23 Am. Jur. 763, Fraud and Deceit, § 14, states our contention which we think should prevail in this case: "The term 'fiduciary or confidential relation' is a very broad one. Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner as to exclude other and perhaps new cases. The cases of parent and child, guardian and ward, trustee and cestui que trust, and principal and agent are familiar instances in which the principle of fiduciary relationship applies in its strictest sense. Its operation, however, is not confined to the dealings and transactions between parties standing in these relations, but extends to all relations in which confidence is reposed, and in which dominion and influence resulting from such confidence may be exercised by one person over another. It is settled by an overwhelming weight of authority that *the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic, or merely personal.* Hence, the rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in, and relies upon, another. The origin of the confidence is immaterial. It has been held, however, not to apply to relations of mere friendship or to cases of natural relationship, such as parent and child, except where the relation of guardian and ward is also involved, as in the case of one just come of age making a gift to the father. Constructive fraud often exists

where the parties to a transaction have a special confidential or fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other. A course of dealing between persons so situated is watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party. No part of the jurisdiction of the court is more useful than that which it exercises in watching and controlling transactions between parties standing in such a relation of confidence to each other. Where a confidential or fiduciary relationship exists, it is the duty of the person in whom the confidence is reposed to exercise the utmost good faith in the transaction and to refrain from abusing such confidence by obtaining any advantage to himself at the expense of the confiding party. Should he obtain such advantage, he will not be permitted to retain the benefit; and the transaction will be set aside even though it could not have been impeached had no such relation existed, whether the unconscionable advantage was obtained by mispresentations, concealment or suppression of material facts, artifice, or undue influence. A confidential relation must be shown to have existed at the time when it is claimed that a fraud has been committed by the violation of it; but the termination of an artificial relation created by the operation of law or course of business, such as that of guardian and ward, attorney and client, and the like, does not necessarily put an end to the application of the rule, which will apply until the dominating influence has been completely removed." (Emphasis supplied.) *Code* § 37-212 provides: "The negligence of the complaining party, preventing relief in equity, is that want of reasonable prudence, the absence of which would be a violation of legal duty. *Relief may be granted even in cases of negligence by the complainant, if it appears that the other party has not been prejudiced thereby."* (Emphasis supplied). We think that this section applies to this case. It is true that it states an equitable principle, but defendants in law cases and law courts may resort to equitable principles to the extent of defeating a plaintiff's claim. While the section was codified from a decision, its principles are not confined solely to mutual mistake

550

cases. The ruling in the case would be the law if the principle had not been codified, and the broad principle stated could be applied to other situations. The principle stated in the Code section calls for a more rigid application in cases of fraud than in cases of mutual mistake. There is no evidence of prejudice in this case unless being deprived of the fruits of one's fraud can be called being prejudiced.

*Ingram v. Rooks*, 221 Ga. 701 (146 SE2d 743), cited by the majority, is not authority contrary to the conclusion we reach. All that case holds is that there was no relationship shown which gave the complaining party a right to rely on the representations of a party at arm's length at the time of the representations. The fact that a testator trusted a person enough to name him or her as executor or executrix does not constitute a confidential relationship which will authorize a devisee to rely on the representations of one named as executrix before the probate of the will because the *devisee* cannot base confidential relationship on the reposing of trust in the named executrix by the *testator*. It is our opinion that the Code sections hereinbefore referred to are not as narrow as the majority contends, and that if any court decision is contrary to the Code sections the Code sections prevail. However, as we construe the decisions, there is not one case which precludes the conclusion we have reached in this case.