### 43450. PASSMORE v. TRUMAN & SMITH INSTITUTE, INC.

ARGUED FEBRUARY 6, 1968—DECIDED APRIL 11, 1968.

*Edward P. Murrah, Jr.,* for appellant.

*Hatcher, Stubbs, Land & Rothschild, Albert W. Stubbs,* for appellee.

QUILLIAN, Judge. ▆ The appellee insists the appeal should not be considered because no transcript of the evidence is included in the record and because the depositions upon which the motion for summary judgment was based were not introduced into evidence. The grant of the summary judgment is the only ruling of the judge enumerated as error. The motion for summary judgment quoted in the preceding statement of fact, by reference, incorporated therein the depositions of Mrs. Marguerite Brumley and Miss Eleanor Passmore so that they became a part of the motion. These depositions were, as provided by former *Code Ann.* § 110-1203 (Ga. L. 1959, p. 234) and now by the present *Code Ann.* § 81A-156 (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238), on file in the clerk's office, certified as a part of the record and duly transmitted to this court. In these circumstances it was not necessary that the depositions be formally introduced into evidence in order to be considered by the

judge in passing upon the motion for summary judgment and by this court upon review of the judge's disposition of the motion.

■ The Acts of the General Assembly creating the Civil Court of Fulton County and the Municipal Court of Columbus relàtive to the duties of each court in preserving the records of the court are essentially the same. Hence this case is controlled by the pronouncement of *Cole v. Cates,* 113 Ga. App. 540, 542 (149 SE2d 165): "While the Civil Court of Fulton County, when first created as the Municipal Court of Atlanta (Ga. L. 1913, p. 145, et seq.) may not have been a court of record, yet, in view of the amendatory Acts relating to the keeping of minutes, etc. (Sec. 4 of Ga. L. 1914, pp. 178, 181; Sec. 4 of Ga. L. 1925, pp. 370, 389; Sec. 1 of Ga. L. 1956, pp. 3271, 3273, Striking Sec. 4 and enacting a new section known as 23a; Sec. 1 of Ga. L. 1951, pp. 3105, 3107, striking Sec. 23 of the original Act as amended by the Act of 1925, and enacting a new Sec. 23 which provides that the Clerk of the Civil Court of Fulton County 'shall perform in said court the same duties that are required of the Clerk of the Superior Court of said county so far as the same are applicable to and not inconsistent with the provisions of this Act . . .'), the Civil Court of Fulton County is now a court of record (*Ozburn v. National Union Fire Ins. Co.,* 45 Ga. App. 33 (163 SE 321)) and as such has jurisdiction to render summary judgments under the Act of 1959 (Ga. L. 1959, pp. 234, 236; *Code Ann.* § 110-1209). No such requirements are contained in the Act creating the Civil and Criminal Court of De-Kalb County, and the case of *DeKalb County v. Deason,* 221 Ga. 237 (144 SE2d 446) is, therefore, not authority for a ruling to the contrary, but sustains the ruling here made."

The enumeration of error which asserts the Municipal Court of Columbus is not a court of record within the meaning of *Code Ann.* § 110-1209 (Ga. L. 1959, pp. 234, 236) and for this reason without authority to grant summary judgments is without merit.

■ In 1963 Mrs. Passmore; plaintiff in the trial court, entered into a contract with the defendant Truman & Smith d/b/a Perry Business College to lease to it for five years described space in a certain building in Columbus. In 1963, contemporaneously

with the first contract, Truman & Smith executed another contract under the terms of which the corporation leased to Miss Eleanor Passmore (hereinafter referred to as Miss Passmore) a part of the space in the building for a period of five years. Thus, each contract was incorporated in and became a part of the other so that the two contracts were in material particulars merged into one contract by the terms of which all three parties, Mrs. Passmore, Truman & Smith and Miss Passmore, were bound. The provisions of these contracts pertinent to the review of this case are here set forth.

The contract between Mrs. Passmore and Truman & Smith provides in part: "So far as the same are relevant, the provisions of said sublease are hereby incorporated herein and made a part hereof by reference. Regardless of any other provision herein contained, the obligation of the tenant herein, Truman & Smith Institute, Inc., to pay a rental of eight hundred dollars ($800) per month, as provided in Paragraph Number 2 above, is, to the extent and in the manner hereinafter set forth, dependent and conditioned upon the payment to said tenant of two hundred and fifty dollars ($250) per month by its subtenant, Eleanor M. Passmore, or her subtenant, so long as said sublease has not been terminated by Truman & Smith Institute, Inc.:

"(a)  In the event that tenant, Truman & Smith Institute, Inc., should exercise its option contained in said sublease to terminate said sublease, then tenant shall thereafter be liable to landlord for the entire sum of eight hundred dollars ($800) per month rental, as provided in Paragraph Number 2 above of this rental agreement.

"(b)  Unless and until tenant, Truman & Smith Institute, Inc., exercises its option contained in said sublease to terminate said sublease: (1)  Tenant shall be liable to landlord for the entire sum of eight hundred dollars ($800) per month rental, as provided in Paragraph Number 2 above of this rental agreement, for each month for which tenant receives the sum of two hundred and fifty dollars ($250) per month from Eleanor M. Passmore, or her subtenant, as rental under said sublease. (2)  For each month during which tenant receives less than the sum of

two hundred and fifty dollars ($250) per month from Eleanor M. Passmore, or her subtenant, as rental under said sublease, the obligation of tenant to pay rental, as provided in Paragraph Number 2 above of this rental agreement, shall be reduced by the difference between two hundred and fifty dollars ($250) and subrentals paid to tenant during such month by the said Eleanor M. Passmore and by her subtenants."

The contract between Truman & Smith and Miss Passmore provides in part: "Tenant shall pay landlord as rent for said premises the sum of two hundred fifty dollars ($250) per month on the first day of each month, as monthly rental, in advance, throughout the term of this rental agreement.

"Tenant shall have the right to subrent or sublease the rented premises, or any part thereof, provided that she first obtain the written approval of landlord to any such subrental or sublease, but no such subrental, sublease, or approval shall relieve or excuse tenant from her obligations under the provisions of this rental agreement, including, but not limited to, the payment of the rental as and when due.

"No termination of this rental agreement prior to the normal ending thereof by lapse of time shall affect landlord's right to collect rent for the period prior to termination thereof.

"This rental agreement contains and specifies the entire agreement between the parties and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied or specified herein shall be of any force or effect. Neither failure of landlord to exercise any power given landlord hereunder, or to insist upon strict compliance by tenant with any obligation hereunder, nor any custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of landlord's right to demand exact compliance with the terms hereof."

From the depositions of Marguerite Brumley and Miss Passmore and the two lease contracts it appears that Truman & Smith was bound under the terms of the contract to pay $800 minus $250 to be paid by Miss Passmore for space in the building occupied by her, for a total of $550 monthly rental for the part of the building it occupied. Soon after the execution of

the contracts Truman & Smith agreed to occupy a small part of the building rented to Miss Passmore and to assume $50 of the rent she agreed to pay. Thus, for a period of time extending from 1964 to October 1966, Truman & Smith paid $600 monthly rental. There was testimony contained in the depositions that for about 12 to 14 months Miss Passmore, with the verbal assent of Truman & Smith, subleased a part of the space to one Welch, but it was understood that she remain bound to pay the $200 per month rental and the sublease to Welch did not in any way affect or vary her obligation to pay rent. Miss Passmore abandoned a part of the building occupied by her in September 1966, whereupon Truman & Smith verbally agreed with Miss Passmore to temporarily take over the abandoned space and pay an additional $100 monthly rental from October 1, 1966. This agreement had the effect of increasing Truman & Smith's monthly rental from $600 to $700 so long as the temporary agreement remained of force, which, according to the undisputed testimony, was from October 1, 1966, to January 1, 1967. When Mrs. Brumley's depositions were taken, she testified the full amount of the rent to be Truman & Smith's was paid up to January 1, 1967, and that it amounted to $2,100. This testimony was not denied and was corroborated by the dispossessory warrant issued in the case which alleged it was to recover rent due for the period from January 1 through April 1967. According to the depositions of both Miss Passmore and Mrs. Brumley on December 31, 1966, Mrs. Brumley, president of Truman & Smith, wrote a letter to The Jefferson Company, Mrs. Passmore's authorized agent to collect rent, in which it terminated the temporary agreement to occupy the space abandoned by Miss Passmore. The pertinent parts of the letter read: "We are enclosing checks to cover the rent through the year of 1966 at the rate of $700 a month. At the beginning of 1967 we wish to return to the terms of our lease at $600 a month. This will release the front room formerly used by Miss Passmore as a reception room for her studio and which she was kind enough to let us have for a few months when we needed it."

The original of the letter was transmitted to The Jefferson Company. A copy of the letter was mailed to Mrs. Passmore

and according to Miss Passmore's testimony it was read by both her and Mrs. Passmore. The effect of canceling the temporary agreement was to again reduce Truman & Smith's obligation to pay rent to $600 per month. The sole issue for decision in the case was whether Truman & Smith' was bound to pay Mrs. Passmore a monthly rent of $800 or whether under the terms of the contract she was only obligated to pay $600 during the first four months of 1967.

The only evidence adduced upon the hearing of the motion for summary judgment, depositions of Mrs. Brumley and Miss Passmore and the affidavit made to obtain the distress warrant conclusively prove the defendant corporation owed only $600 per month rent for the first four months of 1967. Mrs. Brumley's testimony that the $600 per month for the first four months was paid in full is undisputed. It follows that the judge correctly held that there was no genuine issue as to any material fact in the case and his judgment entering the summary judgment is affirmed.

*Judgment affirmed. Bell, P. J., and Hall, J., concur.*