## 70266. KING v. THE STATE.
(339 SE2d 353)

</div>

POPE, Judge.

Charles King appeals his conviction of theft by conversion. He was sentenced to five years probation, 100 hours of community service, and ordered to pay $4,800 restitution. He enumerates as error the general grounds. *Held:*

The jury was authorized to find that King had given Westmoreland a deed to secure debt[1] on certain property to secure a loan of $5,680, and any further indebtedness to Westmoreland incurred by King. The record shows that Westmoreland later gave King an additional sum ($5,000 according to King, $5,800 according to Westmoreland; no note or receipt for the cash transaction was ever made), which Westmoreland believed was secured by the original deed to secure debt. The original loan of $5,680 was apparently satisfied by King's construction of a swimming pool for Westmoreland. The deed

---

[1] The deed to secure debt, prepared by attorney Church, who was partner to attorney Cornwell, recited that it was between William L. King and Westmoreland. William L. King is Charles King's minor son in whose name the property was titled. Church testified that he thought that Charles King and William L. King were one and the same.

to secure debt was duly recorded on the records of Stephens County.

In August 1982 King asked attorney Cornwell to prepare an option to sell to Arwood the property described in the deed to secure debt given to Westmoreland. Attorney Cornwell learned of the deed to secure debt and confronted King about it at the closing. King promised Cornwell that he would use the money he obtained as a result of the sale to satisfy the debt owed to Westmoreland. Based upon this promise, Cornwell closed the sale.[2] King went with Arwood to Arwood's house after the closing and received two checks totaling $4,800. King took the money, and rather than paying Westmoreland, paid one of his pool business suppliers.

" 'In this State . . . a deed conveys title; a mortgage is only a lien.' [Cit.]" *Cole v. Cates*, 110 Ga. App. 820, 823 (140 SE2d 36) (1964). " 'While a security deed passes legal title, it leaves an equitable title vested in the grantor which may be sold or otherwise disposed of in the same manner as a full legal title. A purchaser or grantee from the original borrower acquires the property subject to the security deed where he takes with actual or constructive notice, together with the right of redemption . . . Unless the purchaser expressly assumes the secured indebtedness, it remains only as a charge against the land and a personal liability of the original borrower.' [Cit.]" *Tomkus v. Parker*, 236 Ga. 478 (1) (224 SE2d 353) (1976). "The record of a security deed is constructive notice to subsequent grantees. [Cit.] 'Constructive notice is notice to the world.' [Cits.]" *Cummings v. Johnson*, 218 Ga. 559, 561 (129 SE2d 762) (1963).

The State contends that because of the deed to secure debt, the money which King received from the sale of the property belonged to Westmoreland, and that King had agreed with Cornwell to pay Westmoreland what he owed from the proceeds of the sale. It is the State's position that King's failure to do so constitutes the crime of theft by conversion. We cannot agree that King's actions meet all the required elements of theft by conversion.

OCGA § 16-8-4 (a) reads as follows: "A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another under an agreement or other known legal

---

[2] Cornwell and King gave conflicting accounts of the closing at trial. While we are constrained to follow that evidence which tends to support the verdict, we cannot fail to note the air of casual indifference to legalities in which the closing was conducted. No closing documents were prepared. Attorney Cornwell could not recall whether a real estate transfer tax was ever paid on the property, nor could he recall the purchase price. No money was exchanged at the closing. Cornwell agreed to King's request to conceal from Arwood the existence of the deed to secure debt based upon King's promise to pay Westmoreland. Arwood received a warranty deed in fee simple at the closing. Arwood had specifically declined an offer by the law firm of Church & Cornwell to do a title check on the property. Cornwell did explain to Arwood that since William L. King, a minor, was the record owner of the property, Arwood would receive only a voidable title to the property.

obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own." The holding in *Tomkus*, supra, recognizes that a grantor of a deed to secure debt retains an equitable interest in the property. Thus, King had an interest in the property which he was free to sell to Arwood, subject to the deed to secure debt. Arwood unwisely purchased the property without first examining the record title.[3] Had he done so, he would have discovered the deed to secure debt in favor of Westmoreland. As it stands, he purchased King's equitable interest in the property subject to Westmoreland's security deed. The security deed remained as a lien on the property in favor of Westmoreland, and King remained liable to Westmoreland on the debt underlying the security deed. However, it is clear that the money King received was not Westmoreland's, but his own, for the sale of his equitable interest in the property. Thus, an essential element of theft by conversion, possession by the accused of the funds of another person, is missing. The State's case must fail.

In reversing this conviction, we do not condone King's conduct. However, the State appears to have charged him with the wrong crime. It would seem from the record that if King should have been charged at all, he should have been charged with violation of OCGA § 16-8-3 (a): "A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property. (b) A person deceives if he intentionally: . . . (4) Sells or otherwise transfers . . . property intentionally failing to disclose a substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property. . . ." Of course, King's actions might warrant the filing of a civil action to enforce the obligation of the original debt. We express no opinion in regard to the merit of any such civil suit. For the foregoing reasons, we find that the conviction must be reversed.

*Judgment reversed. Banke, C. J., McMurray, P. J., Birdsong,*

---

[3] Arwood appears to have been relieved of the possible consequences of his unwise purchase by the actions of attorneys Church and Cornwell. After Westmoreland was unsuccessful in collecting his money from King, they stepped in and paid Westmoreland $5,680 to cover the debt owed by King. Consequently, the deed to secure debt on the property was cancelled. The record also shows that the arrest warrant by King was sworn out by attorney Cornwell shortly after the attorneys had paid Westmoreland.

*P. J., Sognier and Benham, JJ., concur. Deen, P. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent. When King received the funds from Arwood for the sale of the property, it was not only for the sale of his equitable title but also of the legal title. He gave a warranty deed. Thus he held the amount necessary to satisfy the deed to secure debt in trust. Whether Arwood had commissioned a title check or not, the money still did not belong outright to King because of Westmoreland's duly recorded deed; King may have had legal title to the funds but he certainly did not have equitable title. He himself recognized this, first by saying he had already satisfied the debt (so that he could get all the sale proceeds) and then, when the attorney discovered he had not done so, by repeatedly promising to satisfy the deed with the proceeds rather than having the attorney deposit them in his trust account and disperse the proper amount to Westmoreland.

The evidence, it appears, supported a conclusion that King converted that money held in trust to his own use. The fact that King deceived both Arwood and the attorney in order to gain unrestricted possession and control of the sale proceeds does not eliminate the conclusion that those funds were not entirely his and that he did convert over $4,000 of them to his own use.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED DECEMBER 4, 1985 —
REHEARING DENIED DECEMBER 19, 1985 — 

*Willie J. Woodruff, Jr.*, for appellant.
*Michael H. Crawford, District Attorney*, for appellee.