1. "Conspiracy is the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." Brown Allen v. Jacobs' Pharmacy Co., 115 Ga. 429, 433 (41 S.E. 553, 57 L.R.A. 547, 90 Am. St. R. 126).
2. In civil actions a conspiracy alone will not support a cause of action. Pursuant to the conspiracy there must be acts or means by which the scheme conceived in the conspiracy is given effect, and damages must result which flow from and have their causal connection in the conspiracy, save that when special damages are shown to result, punitive damages may inhere in the cause of action.
3. Where a contract between one of the conspirators and the intended victim is employed, without the knowledge of the latter, as the means of effectuating the scheme previously conceived in the conspiracy, such contract is clothed in fraud; and where the ultimate consummation of the scheme is dependent on and is cloaked in the exercise of a right expressly provided by the contract, neither the color nor the immunity of contract will save the act from the ingredient of tort.
4. The petition as amended set forth a cause of action against the defendants. The court erred in sustaining the objections of the Ford Motor Company to the allowance of the amendments, and in dismissing the action.
 DECIDED SEPTEMBER 18, 1941. REHEARING DENIED OCTOBER 14, 1941. *Page 42 
The Patterson-Pope Motor Company brought an action in tort jointly against the Ford Motor Company and the Burrus Motor Company, and alleged that the plaintiff had been an independent dealer in the sale of Ford parts and new cars in competition with the Burrus Motor Company, the local authorized Ford dealer for certain territory in and around Columbus; that the Burrus Motor Company had complained to the Ford Motor Company of this competition and its injurious effects, and sought its elimination by the Ford Motor Company, which would leave the Burrus Motor Company the exclusive dealer for this territory; that the Ford Motor Company advised that it had no control of such independent dealers, but only of its authorized dealers; that the two companies thereupon conspired to make the plaintiff an authorized dealer in order that the Ford Motor Company might bring the plaintiff under control by contract, and thereafter, on a right to cancel the contract at will, cancel the contract and financially ruin and damage the plaintiff and remove him as a competitor to the Burrus Motor Company.
This case has been formerly before the court (Ford Motor Co.
v. Patterson-Pope Motor Co., 56 Ga. App. 794, 194 S.E. 69), on assignment of error to the overruling of a general demurrer to the petition, when the court held, as to the Ford Motor Company, that the general demurrer should have been sustained. Further supplementing the statement of facts, we quote from the statement made by the court in that appearance, as the allegations of fact are the same now as then, save only to the extent that the petition was amended just before the return of the remittitur in that case, in order to meet the requirements of the opinion, to state from existing facts a cause of action against the Ford Motor Company. The court stated that the plaintiff "sued the Ford Motor Company and Burrus Motor Company for damages alleged to have been caused by their having fraudulently induced the plaintiff to enter into a dealer's contract with the Ford Motor Company, which it was alleged the Ford Motor Company intended, at the time of the making of the contract, not to perform in good faith, but to fraudulently cancel after its execution, and after the plaintiff had expended *Page 43 
large sums of money under it, in pursuance of the fraudulent intent with which it was made. It was alleged that J. H. Wood Jr., was the Ford Motor Company's Atlanta branch manager, and that his duties required him to negotiate with prospective dealers, to make contracts appointing authorized dealers, and to recommend the termination of contracts with dealers; that pursuant to the conspiracy it was agreed between the defendant conspirators, acting through Wood and Burrus, of the Burrus Motor Company, that as an ostensible excuse for the cancellation of the contract it would be contended that the petitioner was financially unsound; that in furtherance of said unlawful, malicious, and wicked conspiracy the Ford Motor Company, through its agent Wood, induced petitioner, on September 3, 1930, to enter into a contract whereby petitioner became an authorized dealer in Ford products in Muscogee County; that Burrus circulated the false and malicious statements that the Ford Motor Company was dissatisfied with petitioner as a dealer, that petitioner was in financial difficulty, and that the Ford Motor Company would soon cancel the dealer contract, all as a part of the original scheme on the part of defendants to injure and damage petitioner; that the contract was canceled by the Ford Motor Company on the false and fraudulent recommendation of agent Wood, and a reinstatement declined after the Ford Motor Company had ascertained that the reasons given in Wood's recommendation were false and without foundation. The full contract of dealership entered into was not set forth in the petition, but it is conceded by counsel for both sides that it was subject to cancellation at the will of the Ford Motor Company. It was not alleged in the petition that the secret intention of the agent Wood was ever communicated to any other officer of the Ford Motor Company having authority to cancel the dealer contract entered into by petitioner. The suit is not based on the contract, but is based on the alleged tort, namely, the entering into of the contract with the intention not to perform it in good faith, and to break it, to the injury of petitioner in pursuance of the original scheme and intention, even though the contract was subject to cancellation at the will of the Ford Motor Company." The "original scheme and intention" is more fully particularized at the beginning of our statement of facts.
On the foregoing statement of facts the court held that, conceding for the sake of argument only, and not deciding the question, *Page 44 
had the Ford Motor Company exercised its "right" to cancel the contract, though pursuant to the fraudulent scheme, by one of its agents cognizant of the existence of such scheme or conspiracy, such action of cancellation would have been a tort, it nevertheless did not appear that such agent had had any such knowledge or that he had canceled the contract in accordance with such scheme. Accordingly, the court held, no cause of action was alleged against the Ford Motor Company. The court held: "In the absence of any allegation that the original fraudulent intent was made known to a Ford representative who had the authority to cancel the contract, [or] that the fraudulent intent and scheme were ratified by the Ford Motor Company, and [or] that the cancellation was made in pursuance of the original fraudulent scheme, the petition failed to set forth a cause of action in tort, and the general demurrer should have been sustained [as to the Ford Motor Company]."
Before the remittitur was made the judgment of the lower court the plaintiff amended the petition. We quote from the plaintiff's brief which we find to be a succinct summary of the amendments offered, and allowed subject to objection: "Cowling was director of sales for Ford Motor Company and as such had complete and exclusive control and authority over the cancellation of authorized dealers' contracts. Ford did not enter into the contract for legitimate purposes of business, but only for the purpose of destroying the financial reputation and going business of Patterson-Pope, and thereby securing for Burrus Company the exclusive Ford business in that territory. Such bad faith was unknown to Patterson-Pope. The cancellation issued by DeForrester, who worked under Cowling, was without authority and was unauthorized. Patterson-Pope, on the day following the conference with DeForrester, through Patterson, saw Cowling, who stated that he alone had authority to cancel such a contract, and that he had not authorized the action of DeForrester. Patterson-Pope, through Patterson, informed Cowling at that time of the scheme and wrongful intent of branch manager Wood to injure and damage Patterson-Pope by means of the dealer's contract through the methods fully alleged in the petition of Patterson-Pope. Cowling was further informed that Patterson-Pope was not financially unsound. Cowling promised to make a full investigation. About two months thereafter Cowling canceled the contract. At that time he had full knowledge of *Page 45 
the wrongful intent of branch manager Wood in the negotiation and execution of the dealer's contract, and of all subsequent wrongful conduct as set forth in the petition of Patterson-Pope. In such cancellation Ford Company acted through its authorized representative and director of sales, W. E. Cowling, who at the time knew of the wrongful intent and purpose with which the contract was made. Cowling acted with full knowledge and in furtherance of the wrongful intent of Wood, and for the purpose of injuring and damaging petitioner. All of his acts in so doing were performed in the scope of his employment and were authorized by defendant Ford Company and were the acts of such defendant."
The Ford Motor Company timely objected to the allowance of the amendments, and insisted that the petition as amended would state no cause of action; that as amended it would not entitle the plaintiff to the relief sought, and that the amendments should be rejected and the case dismissed. The court sustained the objections and the plaintiff excepted. The sole question presented is whether the petition as amended alleged a cause of action. If a cause of action is stated the plaintiff would be entitled to the relief sought, that is, to damages as for a tort, and the court will have erred in dismissing the petition as amended.
In a consideration of the question presented it appears conclusively, in the light of the rulings made by this court in this case on its former appearance (56 Ga. App. 794, supra), that the plaintiff has perfected the petition by its amendments so that the Ford Motor Company becomes charged with all the acts giving rise to the alleged tort. Accordingly, the court must now decide the question of tort which was not necessary for decision, and was not decided, on the former appearance of the case. While the record does not disclose the cancellation clause in question, on insistence of both parties we take notice of it as set forth in this case on its first appearance (Burrus Motor Co. v.Patterson-Pope Motor Co., 50 Ga. App. 801, 805,179 S.E. 171), and for convenience quote it herewith: "This agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or personal delivery."
In support of the existence of a cause of action the plaintiff contends that it was the victim of a conspiracy by the defendants to control, financially ruin, and eliminate it as a competitor of the *Page 46 
Burrus Motor Company, the authorized Ford dealer; that the only means of effectuating such purposes were fraudulently to induce the plaintiff to accept a regular dealer's contract which would contain a clause empowering the Ford Motor Company to cancel the contract at will, and, upon the plaintiff so contracting and becoming stocked with new cars and Ford products and going to all expense necessary to operate a Ford agency, to cancel the contract according to the right to cancel "at will;" that thereafter the Ford Motor Company did induce the plaintiff, who had no knowledge of the conspiracy, to enter into an apparently binding dealer's contract which in form was regular but in substance was fraudulent; that such fraudulent contract was part and parcel of the preconceived, unlawful scheme, and that the overt act of cancellation, provided in the contract yet preconceived in the conspiracy, was but the final consummation of the unlawful scheme and was taken by reason of that conspiracy and not by virtue of the contract.
On the other hand the Ford Motor Company contends that the allegations show in effect that, notwithstanding the alleged conspiracy as set forth for the purposes indicated, the contract with the plaintiff was a regular form contract providing the rights, obligations, privileges and benefits usual in such contracts; that the contract provided for cancellation at will byeither party; that it remained of force and mutually binding and was performed for more than eight months; that the Ford Motor Company neither made any representations nor offered any inducements to the plaintiff to execute the contract other than those appearing in the contract itself; that it withheld no facts which it was under a duty to disclose and which inhered in the validity of the contract or its proper performance; that the plaintiff well knew that the contract provided for the right in the Ford Motor Company to cancel the contract at will and without reason or excuse, whether arising within or without the contract, and whether antedating the contract or arising currently with its existence; and that it took the contract charged with notice that all investments, purchases, leases, and expenditures necessary to a proper operation under the terms of the contract would be made on the hazard of an untimely cancellation and conceivably without cause traceable to the plaintiff. Accordingly, the Ford Motor Company contends that its cancellation, whatever the motive therefor, was in pursuance of the contract *Page 47 
and that the petition as amended failed to allege a cause of action; and, furthermore, if a cause of action were stated, it was as for tort in the breach of contract, which also the allegations failed to support.
1. This headnote needs no elaboration.
2. A conspiracy alone will not support a cause of action.Reeves v. Maynard, 32 Ga. App. 380 (123 S.E. 181);Woodruff v. Hughes, 2 Ga. App. 361 (58 S.E. 551). InBrown Allen v. Jacobs' Pharmacy Co., supra, the court said: "It will be readily perceived that, if the conspirators stopped with conspiring, and did nothing further in execution of the design, no injury would have been done which would furnish a basis for a civil action." In addition to the conspiracy there must be overt acts to give the conspiracy effect which must result in damages which have their causal connection in the conspiracy. Woodruff v. Hughes, supra; Wall v. SeaboardAir-Line Ry., 18 Ga. App. 457 (2) (89 S.E. 533); Reeves v.Maynard, supra. "If, in carrying out the design of the conspirators, overt acts were done, causing legal damage, the person damaged had a right of action." Brown Allen v.Jacobs' Pharmacy Co., supra.
3. For all purposes we must take as true the allegations of the petition as amended. We think that the unlawful and immoral design which grew out of the conspiracy was the control, financial ruin, and elimination of the plaintiff as a competitor of the Burrus Motor Company, and that the means employed were the medium of a dealer's contract which was regular in form and, apparently, in all respects as to rights, obligations, privileges, and benefits, and in containing a usual cancellation clause providing "this agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or personal delivery." It appears that the ultimate consummation of the design was the cancellation of the contract under the right conclusively reserved under the above-quoted clause. Was such contract tainted with fraud? If so, the act of cancellation, though made ostensibly in pursuance of the contract yet in fact in pursuance of the original fraudulent scheme conceived in the conspiracy, *Page 48 
is not saved by color or immunity of contract containing an enabling provision permitting the act complained of. Did the Ford Motor Company offer any fraudulent inducements to secure the execution and acceptance by the plaintiff of its dealer's contract? The answer must be that only those inducements were offered which sprang normally from the contract relatively to its many provisions and the many advantages and profits ordinarily derived from a dealer's contract for the sale of Ford products to continue until some changed condition arose not then known to exist under this and similar dealers' contracts. Did the Ford Motor Company in execution of the contract with the plaintiff conceal from the plaintiff any facts which it was under a duty to disclose? The answer must be in the affirmative. One of the inducements which promoted the acceptance of the contract was, it must be assumed, that the plaintiff was being offered and was accepting a contract which had a time to run or operate so far as either party under this, as under similar contracts, then knew on a good-faith basis or track, until the advent of some contingent event not then known to exist by either of the parties at the time of executing the contract, — notwithstanding the defeasance provision in the contract allowing it to be canceled at the will of either party. Contracts are made in contemplation of performance, not defeasance; honesty, not trickery or fraud; mutual profit, not injury. The plaintiff had the right to believe, and to act on the assumption, that the contract was being offered by the Ford Motor Company in entire good faith, and in contemplation of extended performance to the mutual profit of each. The presence of the defeasance clause was not notice to the contrary. Consequently the plaintiff had a right to assume that the certainty of extended force in the contract was superior to the chance or likelihood of cancellation, especially from caprice or a motive to injure secretly then grounded in an existent conspiracy. Therefore, when the Ford Motor Company well knew that the contract it was offering was already a "definitely abridged contract;" that it had no intention of permitting it to run over the entire span of its contemplated life, but that pursuant to the conspiracy it would untimely invoke the cancellation clause, and failed to disclose such facts to the plaintiff at the time of the execution of the contract, the failure to disclose was fraudulent and the contract became so tainted. Code, § 37-704. *Page 49 
Mere silence did not alter the rule. Reeves v. Williams,160 Ga. 15 (127 S.E. 293). So, the final act of consummation was not saved by any inherent virtue of the contract. The petition charged a conspiracy, an unlawful design, an immoral means by a fraudulent contract, a final consummation of the design pursuant to the conspiracy, and damages. It set forth a cause of action. The court erred in sustaining the objections of the Ford Motor Company to the allowance of the amendments and in dismissing the action.
Judgment reversed. Broyles, C. J., and MacIntyre, J.,concur.