UNITED STATES of America for the Use
and Benefit of MEVA CORPORA-
TION, Plaintiff,

v.

NORTHEAST CONSTRUCTION COM-
PANY OF WEST VIRGINIA
et al., Defendants.

UNITED STATES of America for the Use
and Benefit of MAGNA BUILDING
CORPORATION, Plaintiff,

v.

NORTHEAST CONSTRUCTION COM-
PANY OF WEST VIRGINIA
et al., Defendants.

Civ. A. Nos. 1345, 1349.

United States District Court
S. D. Georgia,
Augusta Division.

April 29, 1969.

N. William Pettys, Jr., Augusta, Ga., Ronald A. Harbert, Orlando, Fla., for Magna Bldg. Corp. on crossclaim.

James T. Lewis, McLean, Va., Thomas R. Burnside, Jr., Augusta, Ga., for MevA Corp. on crossclaim.

## COUNTERCLAIM OF MAGNA BUILDING CORPORATION AGAINST MEVA CORPORATION FOR ALLEGED FRAUD

## ORDER ON MOTION FOR SUMMARY JUDGMENT

### I

LAWRENCE, District Judge.

This is an action for fraudulent misrepresentation in which one construction firm has sued another on the ground that the latter falsely represented the cost and profitability of a job that the plaintiff, Magna Building Corporation, contracted with MevA Corporation to perform as its sub-contractor and which it completed to its damage as well as regret.

The pleadings and the exhibits connected with the Motion for Summary Judgment, together with the deposition of the manager of MevA and the Presi-

dent of Magna, show that in 1966 a contract was entered into between the United States and Northeast Construction Company of West Virginia for the expansion of training facilities at Fort Gordon.

MevA which is in the electrical contracting business sub-contracted with Northeast on September 29, 1966 to perform all the electrical and mechanical work on the job. Magna is both a general and a mechanical contractor. Prior to the Fort Gordon contract the relationship of the two firms was close. They had performed work for one another on the basis of representations made by each. On numerous occasions, due to the closeness of their relationship, they did not carry out the estimating and bidding procedures normal to the contracting business.

Late in September, 1966 MevA informed Magna that it had obtained the contract for the electrical and mechanical work at Fort Gordon and proposed that Magna take over the mechanical part at a price of $790,000. Allegedly, responsible employees of MevA represented to Magna that the mechanical work could be performed for that amount with a reasonable profit. This representation was knowingly false, it is averred, since previous estimates by MevA indicated that the value of the mechanical work was actually $905,000.

On the basis of the representation in question Magna signed a letter of intent on October 20, 1966 and on October 31st of that year entered into a written subcontract with MevA.

The damages claimed, $115,000, represent the difference between the subcontract price for Magna's mechanical work and the value of performing the same.

■ With the specificity required by Rule 9(b), F.R.Civ.P. Magna alleges all the elements constituting fraud. It is averred (a) that MevA represented that the work could be completed at a cost of $790,000 with at least a nominal profit

to Magna, (b) that MevA knew this representation to be false, (c) that MevA intended to deceive Magna by this representation, (d) that there was reliance by Magna upon the representation, and (e) that Magna sustained a loss as the proximate result. These allegations satisfy Georgia law as to stating a claim for relief. McLendon v. Galloway, 216 Ga. 261, 116 S.E.2d 208; Republic Mortgage Corp. v. Beasley, et al., 117 Ga.App. 303, 160 S.E.2d 429; Edwards v. Stiles, 81 Ga.App. 138, 58 S.E.2d 260. However, the Motion for Summary Judgment goes, in factual content, beyond the bare pleadings.

MevA contends that its alleged misrepresentation is insufficient to support an action in fraud because:

(1) The same concerned an event or act which was to take place in the future (i. e., Magna was to profit at the completion of the contracted-for work) and misrepresentation as to futurity is not fraud in the legal sense. Cowart v. Gay et al., 223 Ga. 635, 157 S.E.2d 466; Jackson v. Brown, 209 Ga. 78, 705 S.E. 2d 756; Pantone v. Pantone, 203 Ga. 347, 46 S.E.2d 498.

(2) MevA's representation was not one of fact but merely of opinion and as such cannot be the subject matter of fraud.

(3) Magna contracted with it at arms' length and had an affirmative duty to inquire into the truth of MevA's representations. Failing to do so, it waived its right to claim fraud.

(4) Magna agreed in writing that it fully understood all terms of the agreement and is estopped from claiming that it was unfamiliar with the cost of the job.

II

The allegations as to misrepresentation are borne out to a considerable extent in the deposition of Grady P. Johnson who in 1966 was employed by MevA Corporation under the title of "Manager of the Eastern United States."

His duties involved over-all management of the eastern half of the nation, including bidding of jobs and opening of new offices.

Johnson's testimony leaves no doubt as to the want of ethics involved in getting Magna to perform the mechanical work on the Fort Gordon project. He admitted that he called an official of Magna and told him about the job. At the time MevA had no "take-off." [1] I quote from Johnson's testimony.

"Q. Now, you called Rothline [Rothlein] from Atlanta and told him about the job?

A. Right.

Q. What was his reaction?

A. Well, of course Bob asked me what the job was worth and I told him and he asked how I knew and I said because I had a take-off, that it was very competitive, it was pennies from our job and it was a good price.

Q. You told Bob you had a take-off?

A. Right.

Q. Did you tell him who made the take-off?

A. Yes, I told him our people had made it, Tony Phillips.

Q. Did you tell Bob that the $790,-000 was the price indicated by the take-off you had?

A. Certainly.

Q. All right, what had Rothline done if anything?

A. Well, told me to get him a set of drawings and specs as quickly as possible which we did. We put them on the plane that very hour, as a matter of fact, not air mail, these were courier type deliveries and we sent him a set of plans and specs and he told me that he would have a man on the job Monday, which he did, I forget that little guy's name, Bob somebody.

Q. Pine?

A. Pine, Bob Pine and, of course, Bob came equipped with a truck, a piece of transportation, or maybe it was a car, but in any event, he came with some transportation and during that week, I kept trying to get Bob to sign the contract so that we would have a definite goal. As it was, we were still swinging free."

Mr. Johnson further testified:

"And I saw that we didn't have a take-off now, Pat never told me that we didn't have one and I think you knew this, when we got back there and I saw that we didn't and further more I saw that our electrical was extremely tight then the only thing which was absolutely not true and this is done, I've done it before and I have had it done to me many times, I told him this price that we gave him, what we had on the job, profit and overhead which might not have been the case but yet he had not signed the contract at this point and he had a right to say no and he had a right to take the thing, this was his problem."

In the deposition of Robert R. Rothlein, President of Magna, he testified:

"Q. At the time that you entered into your agreement to perform this work for $790,000, and you were, based upon your knowledge of Mr. Grady Johnson, and your awareness of the general working conditions, satisfied with the work to be performed for that price?

A. A cursory look at what we had to do showed that it wasn't a $50,000 job, and it wasn't a $5,000,000 job. We trusted that they would be reasonable with us as we had been reasonable with them."

Exhibit A of the Motion for Summary Judgment, which came from Magna's files, indicates that it did do a good bit of independent figuring of the mechanical features of the project before entering into the letter of intent and sub-contract with MevA. The man hours involved and

---

1. A "take-off" is a detailed numerical count and listing of all materials and items that go into the job.

rates of pay were considered and the following summary or tabulation was made:

| | |
|---|---|
| Air Conditioning & | |
| Heating Materials | 70,000 |
| Sheet Metal Subcontract | 80,000 |
| Insulation Subcontract | 58,000 |
| Pipe & Fittings | 61,000 |
| Plumbing Fixtures | 43,580 |
| Boiler Tanks | 40,000 |
| Sprinkler System Subcontract | 5,127 |
| Pipefitter Labor | 200,000 |
| Other Labor | |
| Miscellaneous | 30,000 |
| Sewage Treatment Plant | |

The estimate of labor included 2,500 hours on the sewage expansion work. I am unable to say how much of the sewage plant work is included or omitted in the above figures. A schedule of prices which became an attachment to the subcontract between MevA and Magna shows that the sewage treatment work was evaluated at $190,000.

### III

■ MevA contends that the alleged representations were not statements of fact but merely predictions and opinions as to future profits and events and that, as such, even if false they cannot be the basis of a claim of fraud. The difference between statements of fact and opinion as related to fraud is well recognized in law and an action for fraud based upon mere opinion is insufficient in Georgia. Wrenn & Sons v. Truitt, 116 Ga. 708, 43 S.E. 52; DeMayo v. Walton, 114 Ga.App. 483, 151 S.E.2d 886; Sherwin-Williams Co. v. St. Paul-Mercury Indemnity Co., 97 Ga.App. 298, 102 S.E.2d 919. The difference between fact and opinion is not easily ascertainable and presents a subtle and elusive distinction. See Kohler v. Jacobs, 138 F.2d 440; S & S Builders, Inc. v. Equitable Investment Corp., 219 Ga. 557, 134 S.E.2d 777.

At best, this is an unfirm area for decision and I leave it for more stable ground.

■ Where a party subsequently asserts fraudulent misrepresentation and reliance thereon to his harm it must be shown that the reliance was justified. Lariscy v. Hill, 117 Ga.App. 152, 159 S.E. 2d 443; Blanchard v. West, 115 Ga.App. 814, 156 S.E.2d 164. The defrauded party has an affirmative duty to determine the truth or falsity of the representation and until such efforts are exhausted to rely upon a promisor's statement is done at the risk of the promisee. Hunt v. Hardwick, 68 Ga. 100; Dortic v. Dugas, 55 Ga. 484; Manning v. Wills, 193 Ga. 82, 17 S.E.2d 261; Martin v. North Georgia Lumber Co., Inc., 72 Ga. App. 778, 35 S.E.2d 270; Love v. Nixon, 82 Ga.App. 445, 61 S.E.2d 423.

■ In *Martin, supra*, the Court of Appeals of Georgia said (p. 782, 35 S.E. 2d p. 272), "Where a party by common caution and prudence can guard himself, the law will not protect him in his negligence, and one who grossly fails to inform himself must take the consequences of his neglect * * *." The duty of self-enlightenment is the stronger where the parties have equal opportunity for ascertaining the truth. A failure to exercise facilities for verification is a bar to a recovery for misrepresentation. Daugert v. Holland Furnace Co., 107 Ga.App. 566, 130 S.E.2d 763; Anderson v. R. H. Macy & Co., 101 Ga.App. 894, 115 S.E.2d 430; McDaniel v. Strohecker, 19 Ga. 432.

■ And this is true even where the misrepresentation is intentional and fraud is proven. The dilemma inherent in a controversy between two culpable parties was resolved in Lariscy v. Hill, *supra*. There the Court of Appeals adopted what is the minority rule as far as other jurisdictions are concerned. Judge Hall said (117 Ga.App. p. 153, 159 S.E.2d p. 444):

"The allegations of the complaint present us with the problem of alleged fraud on the part of the defendants and lack of diligence on the part of the plaintiff. 'The policy of the courts is on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to

one's own interests. The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has obvious dangers.' 23 Am.Jur. 948, § 146. The majority of jurisdictions hold that 'judicial experience exemplifies that the former is less objectionable and hampers less the administration of pure justice.' Id. See also 37 C.J.S. Fraud § 30c, page 274. Nevertheless, in Georgia a plaintiff cannot recover where he could have prevented the fraud by the exercise of ordinary care. Brim v. Couch, 184 Ga. 310, 191 S.E. 94. 'In seeking to choose between a fraudfeasor and a negligent party, the Georgia law unfortunately goes with the alleged crook.' Cole v. Cates, 113 Ga.App. 540, 545, 149 S.E.2d 165, 169.''

I am aware that whether plaintiff could have protected himself by the exercise of ordinary diligence is usually left to a jury. Kidder & Co. v. Clement A. Evans & Co., 111 Ga.App. 484, 142 S.E.2d 269; Blanchard v. West, 115 Ga.App. 814, 156 S.E.2d 164. However, where pleadings do not affirmatively allege required diligence and where the facts before the court fail to show anything from which the same may be inferred there is no issue for a jury's consideration. Scott v. Fulton National Bank of Atlanta, 92 Ga.App. 741, 89 S.E. 2d 892; Roley v. Coffey, 220 Ga. 447, 139 S.E.2d 290.

It is an inescapable fact that Magna was either grossly negligent or incredibly gullible in making no substantial effort to verify the accuracy of MevA's representation. It was engaged in mechanical work while MevA was primarily interested in electrical and related operations. The job subcontracted was mechanical and Magna should have been well acquainted with it. It was in much better position to evaluate that phase of the work than MevA. Job cost estimation in the construction business is a complicated process in which large errors of calculation are not uncommon. To say that blind reliance by Magna upon a gross non-detailed estimate such as given by MevA would be foolhardy is something of an understatement. Even where a contracting party has the utmost faith in another's integrity one would normally refuse to assume absence of error in computation and, in the very nature of things, would undertake an independent verification.

Magna's failure to make such an independent determination was not due to its inability to obtain facts and figures necessary to such analysis. Detailed specifications were readily obtainable from the Corps of Engineers. In fact, they were furnished Magna. Its failure to exercise the diligence normal in the industry was due to lack of time and evidently to the fear that if it did not act immediately it would lose the contract and anticipated profit. Magna acted rashly and precipitately. The necessity of haste was no excuse.

It attempts to explain away the failure to exercise reasonable diligence by asserting that a confidential relationship existed between itself and MevA. True, the required degree of care to detect fraud is much less where there is a confidential relationship between two parties than in cases where parties deal at arms' length. Johnson v. Bogdis, 205 Ga. 535, 54 S.E.2d 620; Millender v. Looper, 82 Ga.App. 563, 61 S.E.2d 573; Martin v. North Georgia Lumber Co., 72 Ga.App. 778, 35 S.E.2d 270. Section 37–707 of the Georgia Code defines confidential relations in this language:

"Any relations shall be deemed confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where from, similar relations of mutual confidence, the law requires the utmost good faith; such as partners, principal and agent, etc."

For this section to be applicable a definite fiduciary relationship must exist between plaintiff and the other party. Reposing trust and con-

fidence in another does not create a confidential relationship. King v. Young, 222 Ga. 464, 150 S.E.2d 631; Dover v. Burns, 186 Ga. 19, 196 S.E. 785. Nor is the existence of previous business relations and the resulting development of confidence sufficient. Dixie Belle Mills, Inc. v. Specialty Machine Co., 217 Ga. 104, 120 S.E.2d 771; Thomas v. Eason, 208 Ga. 822, 69 S.E.2d 729. There is never a presumption of confidential relationship. The burden is upon the party asserting same to establish its existence. Crawford v. Crawford, 134 Ga. 114, 67 S.E. 673, 28 L.R.A.,N.S., 353. Plaintiff shows only that it had previous business relations with defendant as a result of which it possessed much confidence in its business ability and integrity. This is not enough.

The conclusion I reach is bolstered by provisions in the letter of intent (October 20, 1966) and the subcontract (October 31, 1966). In the former Magna expressly warranted that it was familiar with and had read the plans and specifications in their entirety. In the subcontract Magna agreed that by its "own independent investigation" it had ascertained the general and local conditions involved in the work and that its failure to acquaint itself with any conditions that would affect performance or cost would not relieve Magna of responsibility "for estimating properly the difficulty or cost of successfully performing the work."

This Court is not a favorable forum for contractors who seek relief for more or less blindly accepting another's word with respect to the cost and profitability of a construction job and who, having done so, execute a written agreement containing provisions like those mentioned above.

Believing that Magna did not act with reasonable care and concluding that there was no confidential relationship relieving it of the duty to investigate the representation by MevA, I must sustain the motion for summary judgment. The fraud count in Magna's counterclaim is dismissed.

This is but a phase of a very complicated piece of litigation involving numerous claims and counterclaims among the three parties. I assume that dismissal of the fraud claim is directly appealable. At all events, I had already determined to separate that issue from the Miller Act features of the case for the purpose of trial. An appeal from this ruling cannot delay the ultimate determination of the litigation and interlocutory appeal, pursuant to 28 U.S.C. § 1292, is granted to Magna.