Fred HANNAH and Mary Grace Hannah, Plaintiffs-Appellees,

v.

M. E. BELGER, Individually, and M. E. Belger, d/b/a the Exchange Bank, and James L. Moore, Jr., Defendants-Appellants.

No. 29163.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1971.

James H. Keaten, Robert W. Patrick, Jr., Stuart E. Eizenstat, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants-appellants.

Lee R. Williams, Douglas, Ga., for plaintiffs-appellees.

Before TUTTLE, BELL, and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a diversity case involving allegations of fraud and a conspiracy to defraud. Finding the evidence insufficient to support the verdict, we reverse.

The present difficulties began in 1964 when Fred Hannah and his wife, plaintiffs herein, and James L. Moore, Jr., agreed to open a Chrysler-Plymouth dealership in Douglas, Georgia. The parties discovered that an initial capital investment of $25,000 would be needed for this purpose, and each agreed to furnish one-half of that amount. In order to raise his half, Moore went to M. E. Belger, the president of the Exchange Bank in Douglas, Georgia. Belger and Moore apparently agreed that Moore would borrow the money and that it would be deposited to the proposed Chrysler dealership's account at the Exchange Bank, but that

the money could not be disbursed until Moore furnished security for the loan. Both clearly anticipated that the security would be forthcoming shortly. Moore then notified Hannah that he (Moore) had arranged for his share of the money, and Hannah promptly forwarded his check to Moore for $12,500.

The corporation was formed and the stock issued to the two men and their families on the basis of the assumed $12,500 investment from each of the two men. The business apparently prospered from late 1964 until August of 1966. During this period, however, Moore did not furnish the bank with any security for the $12,500 note. Consequently, these funds were not available to the dealership for withdrawal. By August of 1966 the corporate bank account was insufficient to cover certain outstanding checks because the Exchange Bank would not allow any withdrawals which would reduce the amount below $12,500. When the outstanding checks were dishonored, the payees notified Hannah who immediately began to investigate. He soon discovered the difficulty. Moore had never put up his share of the $25,000 initial investment. Hannah forthwith began to liquidate the business.

Hannah then instituted this suit against both Moore and Belger, the president of the Exchange Bank, alleging that Moore and Belger entered into a conspiracy to deceive and to defraud him, and that as a result of their malicious and deceitful misrepresentations, he suffered actual damages of $50,000. Hannah in addition asked for $50,000 as punitive damages. The jury found for the plaintiffs against both Moore and Belger and awarded plaintiffs $40,000 which the judge reduced to $39,000. Belger alone appeals from this judgment and we reverse.

It is elementary that in a suit for fraud one essential element is proof that the plaintiff relied on the misrepresentation and was injured as a result of that reliance. McLendon v. Galloway, 1960, 216 Ga. 261, 116 S.E.2d 208; Blanchard v. West, 1967, 115 Ga.App. 814, 156 S.E.

2d 164. In *McLendon* the court quoted the Georgia rule:

"The elements essential to an action in tort for damages resulting from a material misrepresentation constituting fraud are: '(1) That the defendant made the representations. (2) That at the time he knew they were false (or what the law regards as the equivalent of knowledge). (3) That he made them with the intention and purpose of deceiving the plaintiff. (4) That the plaintiff relied upon such representations. (5) That the plaintiff sustained the alleged loss and damage as the proximate result of their having been made'." 116 S.E. 2d at 211 (citations omitted).

In fact the very statute on which plaintiffs have founded their suit, Georgia Code Ann. § 105–302, requires such reliance. In the instant case, however, both Mr. and Mrs. Hannah testified that they had never relied on any statement or representation made by Mr. Belger, and both admitted that in fact Mr. Belger had made no statements or representations to them.

For example, during cross-examination Mr. Hannah made the following admissions:

"Q Now, Mr. Hannah, going back to the inception of this business in Douglas, did you ever have occasion to talk to Mr. Belger before you (sic) putting your $12,500 into the business?

A No sir.

Q Did you have a telephone conversation with him?

A At that time?

Q Before you put your $12,500 into the business?

A No, I did not.

Q Before you put your $12,500 into the business, did you have any correspndence with him?

A No, none whatsoever.

Q Had you ever heard of Mr. Belger?

A I had never heard of him.

Q You never heard of Mr. Belger until late in 1966, after the business began in 1964, correct?

A No. I heard of Mr. Belger when Mr. Moore said that he would deposit his money in this bank.

Q That was the only thing you heard about him?

A That's all.

Q When you deposited your money in this bank, (78) was done (sic) on account of any representation that Mr. Belger made to you?

A No.

Q Now, when was it that you saw the deposition slip that you testified about a few moments ago?

A It was about March or April.

Q Of what year?

A 1966.

Q In 1966?

A Yes sir.

Q Then about a year and a half had passed after you had made your deposit and bought your stock before you saw the deposit slip, is that right?

A That's right.

Q Then you did not put your money into this business on any representation that The Exchange Bank or Mr. Belger made to you?

A That's right."

Plaintiffs, however, attempt to overcome this deficiency in the evidence by alleging that Moore and Belger were partners in a conspiracy to defraud them. We think the conspiracy allegation is insufficient to make Belger responsible for the plaintiffs' plight.

■ In Georgia conspiracy itself is not a substantive tort giving rise to a cause of action. Mills v. Hansell, 5 Cir. 1967, 378 F.2d 53; Foster v. Sikes, 1947, 202 Ga. 122, 42 S.E.2d 441; Patterson-Pope Motor Co. v. Ford Motor Co., 1941, 66 Ga.App. 41, 16 S.E.2d 877. Rather, to be actionable damages must flow directly from conduct which occurs as a result of the unlawful agreement. Foster v. Sikes, *supra*; Patterson-Pope Motor Co. v. Ford Motor Co., *supra*. In *Patterson-Pope Motor Co.*, *supra*, the court, quoting from an earlier case, explained:

" 'It will be readily perceived that if the conspirators stopped with conspiring, and did nothing further in execution of the design, no injury would have been done which would furnish a basis for a civil action.' In addition to the conspiracy there must be overt acts to give the conspiracy effect which must result in damages which have their causal connection in the conspiracy." 16 S.E.2d at 880 (citations omitted).

In the instant case, assuming arguendo that a conspiracy did exist between defendants Moore and Belger, the most that can be inferred from the evidence is that the two agreed, after Moore failed to furnish security for the loan, to make the Chrysler dealership appear to have more money in the bank than that corporation actually had. This occurred after Mr. and Mrs. Hannah made their investment in the dealership. Moreover, both Mr. and Mrs. Hannah admitted that they saw no bank statement until 1966, about two years after they made their investment. Hence it is impossible to find that they were fraudulently induced to part with their money by any act resulting from the alleged conspiracy.

■ In short, there is no evidence that defendant Belger, either alone or in conspiracy with Moore, made any representation upon which the Hannahs relied, to their detriment. If fraud there was it was fraud in a vacuum which, though morally reprehensible, is not legally cognizable. Consequently, the motion for a directed verdict in favor of Belger should have been granted.

■ Moreover, there is another independent ground for refusing to hold Belger responsible for any loss which the Hannahs may have suffered as a result of this business venture. In Georgia one who fails to investigate or use ordinary care to verify a statement made by another may not recover even if the statement is later found to be an intentional

misrepresentation and fraud is proven. United States for Use and Benefit of Meva Corp. v. Northeast Construction Company of West Virginia, S.D.Ga.1969, 298 F.Supp. 1135. In the instant case it is perfectly plain that the plaintiffs made no attempt to verify the capital investment allegedly made by Moore. They made no attempt to exercise even the most perfunctory supervision over the business even though they were aware that the reports submitted to them by Moore were incomplete.

■ Consequently, even assuming a conspiracy between Moore and Belger, and further assuming that the plaintiffs relied on some misrepresentation made as a result of that conspiracy, the plaintiffs still could not recover because they utterly failed to take reasonable steps to protect themselves as required by Georgia law, even though there were no inhibitions to investigation. The Georgia law protects the diligent, but is not the constant guardian of the supine. Here even an iota of economic curiosity on the part of the investors could have secured the stable before the horse galloped out. As Judge Lawrence reminded us in United States for Use and Benefit of Meva Corp. v. Northeast Construction Company of West Virginia, *supra*,

> " 'In seeking to choose between a fraudfeasor and a negligent party, the Georgia law unfortunately goes with the alleged crook.' Cole v. Cates, 113 Ga.App. 540, 545, 149 S.E.2d 165, 169." 298 F.Supp. at 1140.

Admittedly, reasonable diligence is ordinarily a question for the jury. Here, however, there was absolutely no evidence in the record to show that the Hannahs made any attempt to ascertain the true financial condition of the corporation. In such circumstances under Georgia law there was no issue for the jury's consideration and the directed verdict should have been granted. United States for Use and Benefit of Meva Corp. v. Northeast Construction Company of West Virginia, *supra*.

For the foregoing reasons the judgment as to defendant Belger is reversed.

BELL, Circuit Judge (dissenting):

I respectfully dissent. I find sufficient evidence in the record to make a jury issue on the contention that the bank defrauded the Hannahs, and also on the contention that the Hannahs failed to exercise ordinary care in the transaction.

Moore was to invest $12,500 in the capital stock of the corporation as his share of the venture. He purported to pay the sum to the corporation through the medium of a two year loan from the bank. It is undisputed that the loan was a sham in that it was made on paper but the funds were never released to Moore or the corporation by the bank. This was arranged by the funds being pledged to secure the loan and by the bank holding the pledge. This stratagem was of much benefit to the bank: Moore was charged interest on the loan and, of course, the bank obtained the corporate account. The transaction was nothing more than the charging of interest for the service of making it appear to the Hannahs and Chrysler that Moore had paid his share of the capital into the corporation.

There are two facts in evidence which make a jury question on the fraud charged to Belger, the banker, i. e., on the element of the wilful misrepresentation of a material fact by Belger. First the loan was made to the corporation rather than to Moore without a corporate resolution; thus no record appeared in the papers of the corporation from which the Hannahs or the corporate accountants could learn of the transaction. Second, Belger issued an Exchange Bank deposit slip to Han-Mor Chrysler-Plymouth, Inc. showing the deposit of $12,500 by Moore with no restriction whatever being shown on the deposit slip or otherwise. At this point, no one except Belger, Moore and perhaps certain bank employees could have known of the restriction on the use

of the funds derived from the so-called loan.[1]

The deposit slip was a false representation of a material fact to the corporation. The falsity was not picked up by the accountants nor by Mr. Hannah who saw the deposit slip four or five months before the corporation collapsed for want of the $12,500 and when the sham transaction between the bank and Moore was discovered.

This misrepresentation is buttressed by the fact of nine financial statements which were required by and sent to Chrysler by Han-Mor between January 1965 and May 1966. These statements were prepared for Han-Mor by local accountants. They contain not even a clue to the fact that either the corporation or Moore had borrowed Moore's share of the capital from the bank or that the sum borrowed had been pledged back to the bank.

Copies of the financial statements were sent to the Hannahs and they constitute a misrepresentation by Belger acting as a bank to the Hannahs since the false deposit slip and the failure to require a corporate resolution for the loan hid the true facts from the books of the corporation and thereby from the accountants, and thus Chrysler and the Hannahs.

These circumstances would support an inference by the jury of reliance by the Hannahs on the misrepresentation of the fact by the bank through the deposit slip and the failure to obtain a corporate resolution for the loan.

The receipt of the financial statements by the Hannahs are also a demonstration of the exercise of due care by the Hannahs in determining the facts as to the financial status of the corporation. They are sufficient to make a jury question on whether the Hannahs failed to exercise due care.

One last item is worth noting. Belger's testimony was that the loan was to the corporation and that he planned to secure it with Moore's stock in Han-Mor and a few used cars. The pledge would then have been released. He also stated that he was waiting for a corporate resolution from Han-Mor authorizing the loan. The security and the corporate resolution were never obtained. Moore's story was that it was a personal loan and that he hoped to pay off the loan through funds obtained from the sale of property in which his wife had an interest. Moore testified that Chrysler required that Han-Mor have capital of $25,000 and that this was the reason for the capitalization of the corporation in this amount. He also testified that he unsuccessfully urged the Hannahs to put up the entire amount and then made the arrangement in question with Belger.

The majority decision in effect exalts an unconscionable transaction by a bank by finding an insufficiency of evidence of fraud—no misrepresentation to the Hannahs and thus no reliance on a misrepresentation to make a jury question—and also a lack of due care on the part of the Hannahs as a matter of law. I disagree. These were jury issues under the evidence as I view it.

This dissent is not to indicate agreement with all of the items making up the damages awarded by the jury but we do not reach the questions presented as to deficiencies in fact and law as to damages.

1. As a safeguard against the bank ever paying out the proceeds of the loan, Belger finally transferred the $12,500 from the account of Han-Mor to a fictitious account set up solely for that purpose.