No. 16.—WILLIAM B. BENNETT, plaintiff in error, vs. SAMUEL L. TERRILL, defendant.

[1.] There must be fraud on the part of a person recommending another as solvent and worthy of credit, as well as damage to the person acting on such recommendation, to entitle the latter to an action against the former.

Case, in Stewart Superior Court. Decided by Judge KID-DOO, April Term, 1856.

This was an action instituted by William B. Bennett against Samuel L. Terrill, alleging that said Terrill had, by false and fraudulent representations of the solvency of one James O. Wilkerson, induced said Bennett to hire two negroes to said Wilkerson for the year 1852, and to take the note of said Wilkerson, payable on the 25th of December of that year for the hire—the said Bennett being unacquainted with said Wilkerson and relying on the representations of said Terrill.

At the April Term, 1856, of Stewart Superior Court, the case came on to be tried on the appeal, when both parties having announced ready, plaintiff introduced in evidence the note (it being for $160) given by Wilkerson for the hire of said negroes. Plaintiff also introduced the answer of said Wilkerson to certain interrogatories propounded to him, who stated that he did hire two negroes from plaintiff, and gave his note for $160, and that defendant recommended him to

plaintiff, stating to plaintiff that he (Wilkerson) was "perfect-ly good." He also stated that he and plaintiff were stran-gers to each other, and that plaintiff had refused to hire him the negroes before defendant recommended him as good. He further stated that he, at that time, was insolvent, and that defendant advised him to hire said negroes from plaintiff, but gave no reason for so advising him.

The answers of defendant to certain interrogatories were also read by plaintiff and are substantially as follows : He says that plaintiff, did make some inquiry of him as to the solvency of defendant, but he does not recollect the date; that plaintiff approached him on the subject by saying that he and Wilkerson had been in conversation in regard to the hire of negroes and asked him in reference to Wilkerson's solvency. What he said he gave in the confidence of friendship, merely as his opinion—not dreaming that plaintiff would ever seek to hold him liable for the opinion he gave. He stated to plaintiff that he had hired Wilkerson negroes the year before, and Wilkerson had paid the hire ; and thinks he gave it as his opinion that Wilkerson, although a poor man, was good for his contracts, and that he would not be afraid to trust him. He states that Wilkerson was indebted to him at the time he had said conversation with plaintiff, but not to such an extent as to affect his solvency. Some time after the time referred to, Wilkerson executed a bill of sale to him to his property and growing crop, in payment of what Wilkerson was owing him. In taking said bill of sale, he did nothing more than he would have done towards the best man in the county ; he never intended to injure plaintiff one cent in the transaction ; he gave plaintiff an honest opinion as to Wilkerson's sol-vency ; there was no collusion between him and Wilkerson, nor was it his design in what he stated to benefit Wilkerson or damage plaintiff. Plaintiff then closed.

Defendant introduced some 8 or 10 witnesses, all of whom testified that they were acquainted with the character of James O. Wilkerson for truth and veracity, in the neighbor-hood in which he resided in the latter part of 1852, and that

they would not believe him on his oath in a Court of Justice. They also testified that defendant bore a good character for honesty, though he was close and economical. Several of the witnesses stated that Wilkerson was indebted to them in 1852 and had little, if any property, and was not considered solvent.

Plaintiff introduced in rebuttal several witnesses, who testified that they were acquainted with the character of James O. Wilkerson for truth and veracity, and that they would believe him on his oath in a Court of Justice.

The evidence on both sides being closed, the Court, among other things, charged the Jury, " that if the defendant asserted that Wilkerson was good and solvent, assuming to know that he was solvent, even if he did not know of his solvency ; yet if he was insolvent at the time, and defendant was benefited by the declaration, and plaintiff, relying upon the assertion of defendant, was injured by it, the defendant, on principles of equity, ought to respond for the damages sustained by the plaintiff." Defendant's Counsel asked the Court if he meant to say that defendant was liable " whether he made the assertion fraudulently or not?" The Court said " yes." This response was made to Counsel by the Court as the Jury were retiring to their room to consider of the case.

The Jury found a verdict for plaintiff, and defendant's Counsel moved for a new trial, on the grounds, that the Court erred in giving the charge above recited, and that the verdict was contrary to law and the evidence. The Court passed an order setting aside said verdict and awarding a new trial. To which Counsel for plaintiff excepted and assigns the same as error.

TUCKER & BEALL, for plaintiff in error.

No appearance for defendant in error.

*By the Court.*—MCDONALD, J. delivering the opinion.

[1.] The declaration states that the defendant well knew

that the said James O. Wilkerson was, at the time he spoke to the plaintiff of him, in bad and insolvent circumstances, and not fit to be trusted. We find no fault with the charge of the Court. It was for the Jury to deliberate on the facts and determine from them whether the defendant had asserted that Wilkerson was good and solvent, assuming to know his circumstances: whether he was insolvent at the time, whether the defendant was benefited by the assertion, and the plaintiff relying on it was injured by it. After the charge was given, the Counsel for the defendant inquired of the Court, as the Jury were retiring to consider the cause, (to state the question as it is understood by this Court,) " if the defendant was liable, whether he made the assertion fraudulently or not"—and the Court gave an affirmative reply. The Court erred in the answer he gave to the question, and as it was calculated to mislead the Jury, we think the Court did right to correct his error by awarding a new trial to the defendant. There must have been proof of fraud and damage to entitle the plaintiff to recover.

Falsehood, or in the plainer language of some of the authorities, a lie, without damage, will not entitle the plaintiff to recover; but if there be damage with a lie, there is deceit, and injury to the party injured by the deceit is entitled to redress. Justice *Buller* defines a bare, naked lie to be, "the saying a thing which is false, knowing or not knowing it to be so, and without any design to injure, cheat or deceive another person." Such a falsehood is harmless to all but him who utters it, and no action lies upon it. If a falsehood be told with the intention to deceive and injure another, and that other does not act on it, and therefore receives no damage from it, no action lies, although the person intended to be deceived does the act to his damage. But if a falsehood be told to induce a person to act upon it, the person telling it, knowing or not knowing it to be false, and that other acts upon it and is damaged thereby, he is entitled to his action upon it. But it must be borne in mind that there is a difference between a declaration founded on an error of judgment and a

falsehood. A man may err in judgment upon known facts, and, therefore, draw an erroneous conclusion, but he who speaks without a knowledge of facts upon which his judgment is to act, and he makes a positive declaration is as much guilty of an actionable falsehood, if his statement be false, and another is endamaged thereby, as if he had known the statement to be false at the time he made it.

Let the judgment be affirmed.