FOSTER, Sheriff, *et al. v.* SIKES.

No. 15698. APRIL 16, 1947.

*W. S. Northcutt, Ralph H. Pharr,* and *Durwood T. Pye,* for plaintiff in error.

*A. E. Wilson,* contra.

HEAD, Justice. The present case comes to this court on writ of certiorari to a judgment of the Court of Appeals. The trial court sustained a demurrer to the petition of John W. Sikes, defendant in error in this court, and the Court of Appeals reversed that judgment. The opinion of the Court of Appeals (74 *Ga. App.* 350) sets out with particularity the allegations of the petition of Sikes,

the plaintiff in the lower court, and it is necessary here only to briefly set out his contentions. Sikes brought his petition against A. B. Foster, as Sheriff of Fulton County, and Hugh W. Cromer, Carl W. Smithwick, and Mrs. A. B. Foster, as deputy sheriffs, alleging that: The plaintiff conducted a real-estate brokerage business in the City of Atlanta. A named person had listed certain property with him for sale, which he advertised in the daily newspapers of Atlanta. As a result of a conspiracy entered into between the defendants, the defendants Cromer, Mrs. Foster, and Smithwick, falsely misrepresented to him their names, and represented that they were residents of St. Louis, Missouri, in urgent need of a house in Atlanta, and wanted to buy the property advertised if an agreement could be reached on the price. Acting on such false representations, the plaintiff spent the greater part of the afternoon on a stated date showing the last-named defendants the property advertised, and the defendant Cromer stated that he was highly pleased with the property and agreed to purchase it for the listed price, subject to an examination of the title. The plaintiff suggested that he put up a given sum as earnest money to bind the trade, whereupon Cromer stated that he would meet the plaintiff the following morning and sign a formal contract of purchase and deposit the earnest money. On the following day when the plaintiff met the defendants, he ascertained that Cromer had no intention of buying the property, that the representations made as to the identity of the defendants were false, and that they had imposed upon and trespassed upon the plaintiff for the purpose of apprehending a fugitive from justice. The plaintiff charged that he had relied upon the representations made by the defendants and devoted his time and attention in an effort to consummate the sale; that, had the trade been closed as agreed, he would have received a commission thereon of $1050, and charged that he sustained special damages in this sum. The plaintiff further charged that the conduct of the defendants was diabolical, reprehensible, and illegal, and as a result of the imposition upon him he is entitled to general damages of $25,000, and that he is entitled to collect punitive damages.

The Court of Appeals in their decision held in part as follows: "Our view is that the demurrer was properly sustained as to the alleged general damages of $25,000, and the special damages of

$1050 claimed as commissions which would have been received on a sale of the property; but we think that as to plaintiff's loss of time and the alleged punitive damages the petition was good as against the general demurrer. It follows that the court erred in sustaining the demurrer and in dismissing the action."

The petition in this case was for damages for an alleged tort, and the question for determination is whether or not the acts of the defendants amounted to a tort. Our careful study has not revealed a case in this State in any way similar to the present one. The Court of Appeals cites the case of *Pavesich* v. *New England Life Ins. Co.,* 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann. Cas. 561), as being somewhat analogous, the basis of that case being the unauthorized publication of the plaintiff's picture in a newspaper. In the *Pavesich* case it was held that the publication of the picture, without the plaintiff's consent, was a violation of his right of privacy and entitled him to recover, and the court defined personal liberty as including the right "to be let alone." We do not think that case is in any way analogous to the present case. A person who engages in the real-estate business certainly does not ordinarily want "to be let alone" by the public. His is a business which requires publicity in order that it may prosper, and a violation of his privacy in business matters could not be claimed as a damage to him.

The Court of Appeals stated: "We think that the conduct of the defendants as alleged in this case amounted to an unlawful trespass upon the time of the plaintiff, and that it was tortious conduct within the meaning of the law." From the very nature of his business, a real-estate agent invites the public to intrude on his time. If such agents could bring a suit to recover for a trespass upon their time against every person who represented to them that he was interested in buying property, while in fact he had little or no intention of actually buying, the courts could soon be filled with such cases. A person desiring to build may represent that he wants to buy property in order that he may be shown houses of various types of construction. Could the real-estate agent recover damages against such person for a trespass on his time? If he could, he would soon ruin his own business, since people would be unwilling to consult such agent for fear that they might be sued if their motives were not pleasing to the agent. There is nothing

in the petition in this case to show the value of the time of the plaintiff. It would be a matter of speculation as to whether he might have sold some other person the property in question, or other property, during the time he spent with the defendants.

The real purpose of the defendants, as shown by the petition, was to apprehend a fugitive from justice, a task imposed on them by law. While officers of the law who do acts not authorized by law, or act in a wanton and malicious way and with intent to injure the property of another, are responsible for a violation of their duty, there is no evidence in this case that the officers had any purpose to injure or damage the plaintiff, or that he was damaged in any way.

The petition charges a conspiracy between the officers to trespass upon the plaintiff. "A conspiracy is a combination to accomplish an unlawful end, or to accomplish a lawful end by unlawful means." *Luke* v. *Dupree,* 158 *Ga.* 596 (124 S. E. 13). In this case it could not be claimed that the officers had combined to accomplish an unlawful end, since it is shown that their purpose was to apprehend a fugitive from justice. The only contention that could be supported in regard to a conspiracy would be that the officers had formed a conspiracy to accomplish a lawful end, but were using unlawful methods, that is, deceit and fraud.

"Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action. Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action." Code, §§ 105-301, 105-302. "Falsehood, or in the plainer language of some of the authorities, a lie, without damage, will not entitle the plaintiff to recover; but if there be damage with a lie, there is deceit, and injury to the party injured by the deceit is entitled to redress." *Bennett* v. *Terrill,* 20 *Ga.* 86. "To entitle a party to redress for an alleged deceit, he must show both fraud and damage." *Freeman* v. *McDaniel,* 23 *Ga.* 354.

In order for a person to maintain an action against another for deceit, the person suing must show damage. And the fact that several persons had conspired together to deceive the plaintiff would not change this rule. "Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but

the tort committed against the plaintiff and the damage thereby done." *Woodruff* v. *Hughes,* 2 *Ga. App.* 361 (58 S. E. 551); *Reeves* v. *Maynard,* 32 *Ga. App.* 380 (123 S. E. 181); *Martha Mills* v. *Moseley,* 50 *Ga. App.* 538 (179 S. E. 159); *Shell Petroleum Corp.* v. *Stallings,* 51 *Ga. App.* 352 (4) (180 S. E. 654); *Vandhitch* v. *Alverson,* 52 *Ga. App.* 310 (183 S. E. 105); *Drummond* v. *McKinley,* 65 *Ga. App.* 150 (15 S. E. 2d, 535); *Clein* v. *Atlanta,* 164 *Ga.* 534 (139 S. E. 46, 53 A. L. R. 933). In the present case no damage is shown to the plaintiff. He was not harmed personally; his business was not harmed. It is not shown by the petition that the action of the defendants prevented the plaintiff from making a commission on the property shown to the defendants. There is such a total lack of injury alleged that the plaintiff would not be entitled to general damages.

In regard to the special damages alleged, that if the trade had been closed as agreed, the plaintiff would have received a commission thereon of $1050, this item is contractual between the seller and the real-estate agent, payable to the agent when "he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Code, § 4-213. The commission is payable by the owner, and not the person offering to buy, unless otherwise specified by contract, and this item could not properly be claimed as damages in a suit for tort against officers falsely alleging themselves to be prospective buyers.

"In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." § 105-2002. While punitive damages may be given in a proper case even though the actual damage is small, in order for the plaintiff to be entitled to such damages there must be some injury which would support an action for at least nominal damages. A tort must have been committed before punitive damages can be assessed. Since no injury is shown to the plaintiff in the present case, he has no cause of action for punitive damages.

In a careful analysis of this case we find that officers of the law used a ruse by which they obtained the services of the plaintiff in showing them over property, in an attempt to apprehend a fugitive from justice. There might well be a difference of opinion as

to whether such methods are ever justifiable from a moral standpoint. In this case we know none of the attending circumstances. We do know that in some instances officers detect crime and apprehend criminals by concealing their identity from those from whom they seek information. However, even though the actions of the defendants here be considered as diabolical, reprehensible, and illegal, as the plaintiff contends, he did not receive such an injury as the law can redress. While the law will never sanction any wrongful or deceitful act, it cannot redress every private wrong which one member of society imposes on another. It cannot compensate every person for the humiliation of being used in a scheme which he does not understand and has not consented to, nor can it guarantee to everyone that no one will trespass upon his time. The petition in this case did not set forth a cause of action, and the trial court properly sustained the general demurrer.

*Judgment reversed. All the Justices concur.*