## 74218. GALLAHER et al. v. TEEPLE et al.
### (357 SE2d 808)

BIRDSONG, Chief Judge.

Appellants Clyde Gallaher, William Heitmann, Gerald Crockett and James Wilharm, Aldermen of the Town of Thunderbolt appeal from a jury verdict in favor of appellees, plaintiffs below, Charles Teeple, Jr. and Teeple's Seafood, Inc. Teeple's Seafood is a combination restaurant, bar, and retail seafood outlet. Mrs. Nell Teeple is the president and sole stockholder of Teeple's, Inc. Her husband, Charlie Teeple, Jr., is the manager of Teeple's.

The Drug Squad of the Chatham County Police Department was investigating allegations made by an informant to a member of the Drug Squad that he had made a purchase of cocaine at Teeple's on June 1, 1984, and on August 19, 1984, had been present in a room over Teeple's restaurant when two kilos of cocaine were being "cut." The following day an undercover officer made a purchase of three ounces of cocaine from a Teeple's employee, while two other Teeple's employees were said to have acted as lookouts. Other persons were observed smoking marijuana "away from the back door" of Teeple's. Another individual who was present in the restaurant offered to sell 16 pounds of marijuana to the undercover police. Three Teeple's employees and the individual offering marijuana for sale were arrested. One employee admitted making 15 sales of cocaine "out of the back of the restaurant in a period of one month."

Mayor James Petrea of Thunderbolt notified Mrs. Teeple to close her business. Appellees petitioned the Town for a hearing and on August 28 a hearing was held before the Town Council. Major Freeman, head of the Drug Squad of Chatham County, testified about the drug activities at Teeple's, and expressed his opinion that there was no way the Teeples could not have known about the drug sales, because there was so "much traffic that was going on in and out of the back door. They should have known what was going on." The issue was tabled until the next regular meeting of the Council. At the next meeting, the Council voted 4-3 to revoke Teeple's licenses. Alderman Crockett testified that only the restaurant and bar licenses were revoked. At the time this incident occurred, Charlie Teeple was operating the retail seafood outlet in another building. Teeple testified that on the day that he was closed by the Mayor, he was in the process of moving his retail seafood operation back into the restaurant building. However, the testimony of the appellant stands unrefuted that the Council did not revoke the license of Teeple to retail seafood.

Teeple filed an action in Chatham Superior Court for an injunction against the Town Council. On Sunday, September 16, 1984, appellants Gallaher, Heitmann, Crockett, Wilharm, and several other people were gathered in a local restaurant, discussing the injunction

action filed against the Council. The aldermen decided to examine police records to see how much, and what kind of, trouble the police had with Teeple's. They had the Chief of Police admit them to the jail where the records were kept and they examined the police records for 1980 to 1984 on Teeple's and other similar establishments. A summation of Teeple's police calls was prepared and presented to the City Attorney for his use in the injunction action filed by Teeple. A breakdown of the major type of calls revealed: fights 34, disorderly person 26, burglar alarm 14, drunks 12, noisy party 11, accidents 10, larceny 10, hit and run 5, other traffic violation 4, person with gun 4, discharge of firearms 2, drunk driving 2, and lesser numbers of other violations. At the injunction trial, Aldermen Heitmann and Crockett testified for the Town about why they made the police calls list, how they made it, who made it, and where the evidence came from. One of the standards used by the Council on issues of revocation of licenses was the number of police calls during the preceding year. The summary lists of police calls were not released to anyone except the City Attorney, nor were they discussed with anyone else. The Superior Court directed the Council not to interfere with the "business activity of Plaintiffs" in the operation of the restaurant and the seafood outlet, and took under advisement the alcoholic beverage license until a later date, at which time the court directed Teeple's bar be permitted to reopen.

Following the issuance of the court order, appellants received a call from the Assistant City Attorney, who wanted to explain the court's order to them. Appellants gathered at City Hall. That meeting was not attended by the Mayor or two other Town Aldermen. As they left the meeting, the Aldermen were confronted by TV and newspaper reporters. Alderman Crockett was reported as stating: "We are going to pursue the closing of Teeple's right over again. It's a nuisance. It's just plain a nuisance to the City of Thunderbolt." At that same time, Alderman Gallaher is quoted as saying: "I think we will pursue whatever avenue we have to close it. During the past six or seven years, our police have had three or four calls a month there. I felt our community doesn't need it. I thought we did the proper thing. The people of this community don't need something like this." On September 13, 1984, Alderman Gallaher is quoted by a WSAV reporter: "We have had nothing but trouble with Teeple's for the past several years out there. Different things — they have had a killing down there, they have had fights down there, they have had numerous things and I feel it's not an asset to this community to start with."

Charles Teeple and Teeple's Seafood then filed this action, alleging, in essence, slander to the personal reputation of Teeple, "false and misleading information" against another in reference to his busi-

ness, and for damages suffered because of the improper closing of the restaurant, bar, and retail seafood outlet.

The jury found for appellees on the slander against Teeple, but only against appellants Gallaher and Crockett. No general damages were found, but punitive damages in the amount of $1,500 each were assessed against Gallaher and Crockett. The jury also found for appellees on the issue of tortious interference with a business interest against all four appellants, and assessed against each appellant — $6,000 in special damages, $3,500 general damages, and $4,500 punitive damages. The jury found for appellants on the issue of malicious acts by public officials against the appellees, and for appellant Wilharm on the issue of "slander" against appellees. The trial court directed the jury to return a verdict in favor of Mayor Petrea. Appellants appeal from judgment entered on the jury verdict. *Held*:

1. Appellants contend the jury verdict for punitive damages cannot be sustained where no actual damages were awarded. This issue was first raised in the trial court in appellant's post-trial motion for judgment notwithstanding verdict, or in the alternative, a new trial. Appellees argue that under OCGA § 9-11-50 (b), a motion for directed verdict is a condition precedent to consideration of a claim of error in a motion for judgment n.o.v. Appellees are correct. *Sun v. Bush*, 179 Ga. App. 80, 81 (345 SE2d 85); *Batson v. First Nat. Bank*, 170 Ga. App. 803 (2) (318 SE2d 227). Where an issue is not raised in a motion for directed verdict, it is not error to deny a motion for judgment n.o.v. *Whitman v. Burden*, 155 Ga. App. 67 (1) (270 SE2d 235). However, we will examine the merits of the claim of error because of the denial of the requested alternative remedy, new trial.

Appellees' complaint sought "punitive damages . . . to deter this type of conduct in the future." Where there are "aggravating circumstances . . . the jury may give *additional* damages to deter the wrongdoer from repeating the trespass. . . ." (Emphasis supplied.) OCGA § 51-12-5. Hence, punitive damages are "additional damages" to compensatory damages. *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544 (216 SE2d 776). An award of punitive damages will not lie when no other damages are recovered as to that injury. *Haugabrook v. Taylor*, 225 Ga. 317, 318 (168 SE2d 162); *Foster v. Sikes*, 202 Ga. 122, 126 (42 SE2d 441); *Kelley v. Austell Bldg. Supply*, 164 Ga. App. 322, 323 (297 SE2d 292); *Public Fin. Corp. v. Cooper*, 149 Ga. App. 42, 45 (253 SE2d 435). The trial court erred in failing to grant a new trial as to this issue.

2. Appellants claim they were entitled to judgment notwithstanding the verdict on appellees' claim of malicious interference with business. We agree. There were numbers of allegations in appellees' complaint as bases for recovery of damages for tortious interference with appellees' business — (a) appellants' votes in the Town Council

to revoke their licenses (described as "illegal action of the Defendants"), (b) "false and misleading" information taken from the police files which "was presented to the court and to the public" to justify appellants' actions, further described as "oppressive and unauthorized," and "was done with malice, solely for the purpose of causing damage and injury to Plaintiffs . . . ," (c) that appellants Gallaher, Heitmann, Crockett and Wilharm "secretly met on several occasions in preparation for the presentation of false and misleading information concerning the operation of Plaintiffs' businesses, specifically presenting information to the court and the press" that Teeple's had been the object of numerous police calls involving serious and violent crimes, and (d) such "false and misleading information" was presented "to the court and to the press" with regard "to Plaintiffs' business and livelihood, was done with malice, solely for the purpose of causing damage and injury to Plaintiffs. . . ."

Appellants filed a motion in limine which included, inter alia, a request that the court prohibit appellees, their counsel and witnesses, from testifying or characterizing "any statement made by any Defendant *in Court* as slanderous or defamatory." (Emphasis supplied.) In discussion of this motion in court, appellees' counsel agreed they would not "characterize any other statements [of appellants] other than those three [made to the TV and newspaper media] as slanderous . . . beyond that we object." The court ruled: "I deny your motion as far as that's concerned."

During trial, this issue arose again on cross-examination of appellant Heitmann. Appellants' counsel objected: "This Court has already ruled that these men cannot be held liable for anything that was introduced into Court at that hearing, that the act of introducing that material is not any kind of violation for which they can be held liable." Appellees' counsel responded: "That's incorrect, Your Honor. The Court has ruled that as far as the issue of slander, any statements made and [sic] in Court proceedings would not be a proper basis of slander. However, we have the other theory, and that's the . . . interference with business. We plan to prove this entire conspiracy of the idea to pull these records and present them in Court and so they were picked up in public and the press and making statements about them afterwards." The court ruled that plaintiffs' counsel "can inquire as to what they did with it. That has nothing to do with the evidence in Court. Now, he's asking him now what he did with them [the statistics on police calls to Teeple's] after he compiled them. I'll permit him to testify to that." During trial, appellants Heitmann and Crockett were examined about their role in preparing the composite list of police calls to Teeple's and about their testimony *in court* in the action for the injunction.

During the period investigated, from 1980 to 1984, the number of

police calls to Teeple's had drastically declined from 1980 to 1984. Although there were 179 calls for the entire period, only 17 were received in 1983 and only 5 for 1984. Appellees' counsel argued to the jury: "But that wasn't the way it was presented to [the injunction] Court . . . they had the City Attorney present that list to Court, and let Mr. Crockett and Mr. Heitmann testify about that list in Court. . . ." Appellees' counsel argued that such actions by appellants constituted "interference with business. Tortious . . . [appellants] had them [the police calls] present in Court, and they talked about it, and talked about, and talked about it . . . and they knew that what they presented would interfere with the business." Hence, counsel for appellees, in the complaint, in argument to the court and the jury, argued that the conduct and testimony of appellants in court, in the action on the injunction, provided a basis for recovery of damages on their claim for tortious interference with business.

There is no evidence of record that appellants procured the introduction in evidence of the police calls to Teeple's. They presented such evidence to the City Attorney. Appellant Crockett testified: "I read off the list when I was asked by Judge Cheatham some questions and [in response to] some questions [from appellees' counsel]." Such testimony and evidence was presented in defense of appellees' action for an injunction and was absolutely privileged. *Rimes v. Weathers*, 244 Ga. 875 (1) (262 SE2d 145); *Dennis v. Adcock*, 138 Ga. App. 425, 429 (4) (226 SE2d 292); *Horton v. Tingle*, 113 Ga. App. 512, 513 (149 SE2d 185); *Veazy v. Blair*, 86 Ga. App. 721, 726 (72 SE2d 481). " 'No actionable liability attaches to a witness for any statement in his testimony (no matter how false or malicious it may be), unless the witness, without being asked, volunteers a false and malicious defamatory statement which is not pertinent. . . . The answers of a witness in direct response to questions by counsel . . . are absolutely privileged.' " *Horton*, supra at 515. The trial court erred in refusing to give appellants' requested charge that statements made by a witness in court proceedings, responsive to questions, are absolutely privileged and cannot form the basis for a cause of action for the tort of malicious interference with business. We cannot say as a matter of law, that the verdict of the jury for damages on the alleged tort of malicious interference with appellees' business, was not predicated in part on appellant's testimony in court on the action for an injunction, as alleged in the complaint and argued for by appellees' counsel.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 29, 1987 —
REHEARING DISMISSED MAY 22, 1987.

*David R. Smith*, for appellants.
*James O. Wilson, Jr.*, for appellees.