A96A1882. REYNOLDS v. FLINT RIVER TECHNICAL INSTITUTE et al.
(477 SE2d 393)

MCMURRAY, Presiding Judge.

Plaintiff Richard Reynolds brought this action alleging fraud and breach of contract on the part of defendants Flint River Technical Institute ("Flint River"), formerly known as Upson Technical Institute), and the Georgia Department of Technical and Adult Education ("the Department"), alleging defendants "deprived him of his contract rights by terminating him 'disguised as a reduction in force' from his employment without just cause." He also alleged that he was improperly granted only "six (6) retention credits based upon three (3) years of continuous service[, . . . whereas] he should have been given ten (10) retention credits. (Based upon twenty-four years of continuous service.)" Plaintiff further alleged the existence of a "coverup of the details and nature of the reduction in force [. . . as purportedly evinced by] the removal of documents from Plaintiff's personnel file which . . . [allegedly] refute the claims made in the reduction of force plan[, and further evinced by the fact that defendants] deliberately and improperly altered the official record by placing a bogus [i.e., back-dated] letter in the file of the Defendant [Flint River]."

In their joint answer, defendants denied the material allegations and defended in part on the basis of the written employment agreement with plaintiff. Defendants further contended that "the General Assembly mandated state wide budget cuts during 1991[, as a consequence of which, plaintiff] was properly included in the Reduction in Force pursuant to the policies and procedures promulgated by the

Department and O.C.G.A. § 20-4-35."

After discovery, defendants moved for summary judgment as to both breach of contract claim and fraud. In support of their motion, defendants relied on the following undisputed chronology: Plaintiff was hired in 1967 by the Upson County Area Board of Education as a math and physics teacher at Upson Technical Institute. In 1983, he agreed "to teach the first part of electronics and the related math, the technical math." Plaintiff became the "team leader of [the related math department, consisting of] three instructors[.]" Throughout 1988, the State of Georgia, through the Department, took over ownership, control, and operation of most locally run technical institutes, including Upson Technical Institute in July 1988. A "single system of schools . . . implemented statewide standards instead of local standards. [Plaintiff's . . .] job remained the same but the school went fairly quickly from an individualized type [of] instruction to a . . . step lecture lab, much like college." Plaintiff's employer "became the [State] Board of Technical Adult Education[.]" Plaintiff was given an election to remain under the Teachers Retirement System ("TRS") or choose to participate in the Employees Retirement System of Georgia ("ERS"). Plaintiff chose the ERS, meaning that he "was no longer an active contributing . . ." member of the TRS. On July 15, 1988, plaintiff applied for and began receiving retirement benefits from the TRS. Plaintiff considered himself "retired under TRS, but not retired [from working]."

Plaintiff's 1991 contract with the State Board of Technical and Adult Education, as employer, provided, in part, that plaintiff, as "employee[,] agrees to observe such curriculum and standards and obey such reasonable rules and regulations as may, from time to time, be put in force by appropriate lawful actions of either UPSON TECHNICAL INSTITUTE or the employer." The employment contract expressly stated that it was "made in anticipation of the employer receiving sufficient funding. In the event the employer receives less than the amount of funds scheduled to be allocated, then this contract shall be subject to termination at the discretion of the State Board." But the contract also provided: "This contract shall not be terminated by the employer except as provided for by the policies of the Georgia State Board of Technical and Adult Education presently [sic] in force hereinafter adopted."

Pursuant to a 1991 governmental mandate to reduce costs, the Department implemented a Reduction in Force (RIF) policy. A reduction in force is defined in part as the "lay off or demotion of one or more employees as the result of a shortage of work or funds. . . ." Among employees, retention credits were assigned based on "the length of continuous unbroken service in the same institution. Continuous service means an individual has been continuously employed

by the institution and has not retired and been re-employed by the same institution under a different retirement system."

The trial court granted partial summary judgment as to the fraud claim while denying summary judgment as to the contract claim. Plaintiff appeals from that partial grant of summary judgment. *Held*:

" 'Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action. Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action.' Code [Ann.] §§ 105-301, 105-302 [now OCGA §§ 51-6-1 and 51-6-2]. 'Falsehood, or in the plainer language of some of the authorities, a lie, without damage, will not entitle the plaintiff to recover; but if there be damage with a lie, there is deceit, and injury to the party injured by the deceit is entitled to redress.' *Bennett v. Terrill*, 20 Ga. 86. 'To entitle a party to redress for an alleged deceit, he must show both fraud and damage.' *Freeman v. McDaniel*, 23 Ga. 354." *Foster v. Sikes*, 202 Ga. 122, 125 (42 SE2d 441).

For purposes of summary judgment, we accept plaintiff's version of the material facts, including his years of teaching since 1967 and the alteration and substitution of documents in his personnel file. Nevertheless, in order for plaintiff to be eligible for the ten retention credits he claims, he must have had five or more years of continuous unbroken service in the same institution. But it is undisputed that plaintiff elected to receive retirement benefits from the TRS in 1988 and begin anew under the state ERS. In our view, the legal consequence of this election is that plaintiff has not been continuously employed by the institution because he has "retired and been re-employed by the same institution under a different retirement system," within the meaning of the Department's authorized RIF plan. It follows that in 1991 plaintiff was eligible under the RIF plan only for the six retention credits he was originally accorded, for his three years of continuous service since his 1988 election. Consequently, he has sustained no legal damage that was proximately caused by the absence of timely knowledge of his appeal rights stemming from the allegedly fraudulent alteration of documents in his personnel file. "This is to say that even [though] we assume that the plaintiff has alleged fraud and deceit, insofar as he attempts to allege an affirmative action for deceit, his [evidence], properly construed, merely [indicates] *damnum absque injuria*. See in this connection *Johnson v. Giles*, 69 Ga. 652, [654] and citations." *Gaultney v. Windham*, 99 Ga. App. 800, 807 (3), 808 (109 SE2d 914). The trial court correctly granted partial summary judgment with respect to plaintiff Richard Reynolds' claim of fraud in his termination under the RIF policy.

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Har-*

*old R. Banke concur.*

Decided October 16, 1996.

*Samuel W. Cruse*, for appellant.
*Michael J. Bowers, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, Dennis R. Dunn, Senior Assistant Attorney General, Rebecca S. Mick, Assistant Attorney General*, for appellees.